Henderson, Judge. —
 

 He on whom the law casts an inheritance 011 the death of the ancestor, is designated by the technical word
 
 heir.
 
 It could not originally be used to designate him on whom the law cast the goods ot chattel property, for it cast them on no one, no person was appointed by law to succeed to the deceased ancestor;
 
 *395
 
 on bis death, they became
 
 bona vacantia,
 
 ami were seized by the king on tiiat account, and by him, as grand ai-moner, applied to pious uses, now considered superstitious, for the good of the soul of their former owner. Hence it is, that in the common law vocabulary* there could be found no technical word to designate such successor. After one was pointed out by the Statute of Distributions, the technical word used in regard to inheritances, would not answer for that purpose
 
 ;
 
 for very frequently the persons are different, the rules of construction being very different from the canons of descent. The meaning of the word
 
 heir,
 
 therefore, retains its primitive and technical meaning, when standing alone, and unexplained by the context. But as words of every kind, technical as well as others, and particularly when used in last wills, are liable to be varied in their meaning, to meet thedntention of those who use them, when shewn in an authentic manner, the word
 
 heir
 
 may mean some other person than him on whom the law casts the inheritance in a real estate; and the question is, whom.does it mean, when used in a last will, in reference to personal property ?
 

 It is admitted by all, (hat it does not (unless under peculiar circumstances) mean the heir to real estate. By some, it is said that it means children ; by others, next of kin; and by others, all those who are called to succeed to personal estate by the law (the statute of distributions). Those who are in favour of the meaning first mentioned “ children” say, that this is its vulgar and common meaning, and as it cannot iiave its technical one, it must have this. I think that the premises are incorrect, and even if correct, that the conclusion does not follow; the word heirs, in common conversation, may and very often must be understood, to mean children ; but this arises, not from the word alone, but from the context, the mariner and cause of speaking; for a person to say that another has got an heir, or that lie has heirs, must unquestionably mean, if the speaker meant any
 
 *396
 
 thing, that he has a child or children j for, to understand him as communicating something, and at the same time to use the word heir, in its extended sense, is next to im-p0ggjjjje . for títere is not a man in a hundred thousand born, without there being some one to succeed to his property, should he die instantly, particularly to personal property, where foreigners are not excluded. Most of us are born witii innumerable heirs, if so understood, unless therefore, we are speaking of some foreigner, just come among us, and then in regard to real property, or some person whose family connection is unknown, or supposed to be unknown, to the person spoken to, children must be presumed to be meant by the speaker, by the word heirs for we are not born with children— they are an after acquisition
 
 ;
 
 all of us do not have them at any time, it would be an absurdity to suppose, that the speaker designed to communicate to another, to inform him that another had that which is common to every man in the community, when, by not a very strained construction, a sensible and rational meaning can be attributed to the speaker. I think therefore, that the word heirs, of itself, unaided by any thing else, does not mean children, in common or vulgar conversation ; ■ although in such conversation, it must be so understood, to give to the speaker a rational meaning, or any meaning at all. This arises from what may properly be called the context, the subject; and if the premises are right, I should think the conclusion
 
 wrong;
 
 for the word was certainly adopted from the law of inheritances, and thereby acquired an analogous meaning, which would, by such construction, be entirely lost. Others say, that it means
 
 nextojjdn,
 
 admitting the analogy, and contending that blood connection is an essential constituent in an heir. It is admitted, that by the canons of descent in England, that one to succeed as heir, must be of the blood of the ancestor j but he is heir, not because he is pf the blood, but because he is the successor to the estate ..of the dead man. The law has prescribed blood as a
 
 *397
 
 qualification
 
 ;
 
 but the right to succeed, and not the reason wherefore, stamps him with the character of heir. The law prescribed the canon of descent, to point out the
 
 successor;
 
 the person who succeeds is heir, not because he succeeds by this or that rule, but because he
 
 succeeds.
 
 And at once to put the argument at rest, it may be asked, does the widow who succeeds to theestate of her deceased husband, under our act of 1801, come to the estate by purchase, or descent ? For she must come in by the one or the other of these two ways ; there is no other. It is very clear that she does not come in .by purchase ; that is, by her own act she is perfectly passive 5 it is thrown upon her by law,' as much as it is thrown upon the un-de, there being no issue, brothers or sisters, or their issue; that is, none whom the law prefers to him. If she does not come in by purchase, it follows, that she comes in by descent. She is therefore, in such case, the heir of the husband — yet she is not of his blood.
 

 Mr. Blacksione,
 
 in his discussion of the question, whether the Lord, who comes in by escheat, comes |in by descent or purchase, has caused some confusion on this subject. He could find no canon of descent which pointed to the lord as heir to his tenant $ the lord was passive, at least not active in the character of purchaser,
 
 i. e.
 
 acquirer, and there was evidently a vague notion floating in his mind, that he is not heir, because not of the blood. At length he takes a* middle conrse, the one most apt to be taken by those who are not sure which course is right, and says that he succeeds by a kind of
 
 quasi
 
 descent, a kind of caducary succession. The fact is, that he succeeded to the
 
 estate
 
 of his tenant by neither
 
 •,
 
 for he succeeded to his
 
 estate
 
 not at all, for the
 
 estate
 
 of the tenant expired by his death without heirs capable of succeeding him. It expired by the terms of its own limitation
 
 ;
 
 for it was to him and his heirs
 
 ;
 
 when they failed, the lands, not the
 
 estate
 
 reverted to the grantor, the lord of whom he held them. The lord took the
 
 lands
 
 again in virtue of that right of reverter, which in law is called a seig-,
 
 *398
 
 n0py. He comes in, not under, or representing1 the tc-nant, but above him, and by virtue of a different estate. Exclude the idea of blood, and it is matter of surprise jiQW c0|1](| ^)e doubted, that the widow is not included in the word heir, when applied to personal property. Her claims to the succession, are precisely the same with the next, of kin ; both unknown to the common law, and both given by the same statute. Wby the word heirs, should be translated into next of kin, cannot he accounted for, otherwise than by blending blood connection with heirship; and if the meaning either of children, or next of kin, is tobe received, grandchildren, where there are children, will be excluded ; for it is said, that grandchildren cannot take under the description of children, where there are children, nor under the description next of kin; for grandchildren are not
 
 next,
 
 whilst there are nearer,■ and in the statute the evil is guarded against in lineal succession, and in collateral, as far as brothers and sisters children; the Legislature being|aware that the more remote of kin would be excluded oy the nearer, under the description next of kin.
 

 •These afford insuperable reasons, why the word heir snould not be understood to mean either next of kin or children. If therefore, it neither means next of kin, nor children, there can be no objection to give it a meaning analogous to what is the proper technical meaning of the .words
 
 mutatis
 
 mutandis, i.
 
 e.
 
 they whom the law has appointed to succeed to the personal estate of dead men, who make no appointment themselves ; as in real estates in such cases, the heir is he who is appointed by law, to succeed the dead man. — By this definition, all those appointed to take under the statute of distributions, are embraced, the law speaks and designates the heirs. Unless this expression is tolerated and permitted to bear this meaning, we shall be totally unable
 
 to
 
 express the idea without using a phrase instead of a term ; for 1 know of no other term which will convey the idea. Distribu-tee is sometimes used* but scaroely ever without an apo
 
 *399
 
 logy for it; a term of our own coinage, which is not be found in Johnson’s D ictionary, in Jacob’s Law Die- / tidnary, nor in any other that I know Of. I do not recollect to have seen it, in any English work of note, 0r not of note. As far as I have been able to ascertain, the English authorities warrant this construction : I am very well satisfied that
 
 they
 
 are not against it.
 
 Sir William Grant
 
 very lately said, he was not, in the case then under consideration, called on to decide it, but that his opinion was, heirs, when applied to personal property, meant heirs
 
 quoad
 
 the property, and he repeated the same thing in another case.
 

 It is true that there is a case to be found in
 
 Ambler
 
 (who is said to be not very high authority) decided by the Master of the Rolls,
 
 Sir Thomas Clarke,
 
 where it is said, that heir means children ; but the absurdity to which this led him, is its own refutation. He first said that heirs meant children, and as grandchildren where there were children, did not mean children, he excluded the grandchildren. He should have recollected thatJMtilum
 
 simile est idem;
 
 when drawing from the likeness he had taken, he should now and then cast an eye on the original, and the truth is, all who thus translate will be carried into the same absurdity.
 

 Many cases were cited, I will examine a few of the most prominent. In 1
 
 Ves.
 
 84, the testator directed that certain personal property, after the death of his wife, to whom he had given the greater part of his estate (and possibly the whole) for life, should be equally divided among his
 
 relations, according to the statute of distributions.
 
 It was decided, that it was not intended by the testator, by the words relations, to include the wife ¿ -first, because the wife is not the relation of the husband— which means blood connexions — and I think properly,, the husbands and wives of such, who are by marriage identified with each other ; secondly, he had given a life estate in the greater part, and probably all of the same property, which incongruity raised a presumption that
 
 *400
 
 he did not intend to include her. It was farther said, that she was not brouaht in by the words
 
 according to the statute of distributions ;
 
 that by such reference to the Matute, he did not intend to point out who was to take, for that he had done before by the word relations; but only how they are to take. I express no opinion on the correctness of this latter part, for it does not affect this case, or this part of it. In 18
 
 Ves. 53,
 
 the words are
 
 my next of kin, as if I had died intestate.
 
 It was held, and very properly, that the widow was not intended by these words; the wife is not kin,
 
 i. e.
 
 of kind to her husband. That had been long settled, soon after the statute of
 
 Henry
 
 viii. relative to granting administrations. The words, as if I had died intestate, as said above, did not point to the persons who were to take, but to the manner, and they could not enlarge by mere implication, the known and definite meaning of the words
 
 next of kin.
 
 In the same book,
 
 p.
 
 49, the words are,
 
 next of kin
 
 or
 
 personal representatives.
 
 As it is the office and nature of a limited description, to control and limit a general one, the
 
 general description, personal representatives,
 
 was
 
 controlled
 
 and
 
 limited
 
 by the more
 
 limited
 
 and
 
 restricted one next of kin;
 
 at least that is the reason assigned. Ths case of
 
 Vaux Henderson,
 
 decided in 180G, by
 
 Sir William Grant,
 
 to be found in
 
 Jacobs
 
 <§•
 
 Walker 387,
 
 in a note, was not, as I conceive, upon the point; the question there, was not, what particular individuals composed the heirs, or more properly were comprised under that description
 
 ;
 
 but which class was entitled. The question arose in
 
 Coutts’
 
 will, who had bequeathed to
 
 Vaux
 
 ¡£¡200. and in case of his death before him, to
 
 Vaux’s heirs; Vaux
 
 died before him, the contest was between those who answered the description at
 
 Coutts’
 
 death, and those who did so at
 
 Vaux’s
 
 death. The Reporter called them the next of kin, a phrase no doubt of his own, as the question who they were, did not arise; the contest was between classes, and not
 
 individuals;
 
 a term therefore was used different for the purpose, without any regard to the points
 
 *401
 
 whether it embraced all, and excluded none of those^who contested the question. The words came nearer to it than any other words winch lie could well use ; for, as was said before, there is no technical word, and he would dislike, as a lawyer, to use the word heirs, when speaking of personal property. It was quite natural for him to use the word wbid'll embraced the greatest number of individuals composing the class, although it might exclude some ; for it did not interfere with the question the note was designed to illustrate. The case proves nothing; for aught that appears, the widow might have been named in each class, if she was named in one she was in the other. Her claim, except as to the quantum, possibly by there being more in one class than the other, was not affected by the question. And as a confirmation that I am right in this view of the case, the decision was made by
 
 Sir William
 
 Grant, whose opinion I have before stated.
 

 I must not pass over the case of
 
 Whitehurst’s
 
 heirs, decided in the late Supreme Court, in which decision I participated, ami which principle I think is at variance with the opinion here delivered. I have no hesitation in saying, that the decision was wrong. It was decided without argument, and on the authority of a case in
 
 Fere
 
 Williams, which I confess I did not then understand.
 

 Upon the whole, I am satisfied, that this testator meant, by the words “
 
 to be divided among all my heirs agreeable lo the statute of distributions of Intestates estates,”
 
 to call to the succession, all those, and only those, whom the law appoints to succeed to the personal' estate of a dead man, in default of his having made an appointment himself; and that his widow, in this case, is one of them. Upon the point of bringing advancements into account, after much hesitation, I am of opinion, tiiat the property-passing under that clause in his will, was not to be affected by any disposition which he had at any time made of any other property; that the statute of distributions was referred to, to designate who he meant, by the wort?
 
 *402
 
 heirs, and to point ont the manner of the division of that property.
 

 I think that the widow has abandoned her claim to the g1200 . |t ¡s }and, it was given in lieu of land, taking dower satisfies her for all claims for
 
 land;
 
 she cannot have her full share of the land, and that which was intended to make her share a full one.
 

 The Master of the Court will take an account of the personal estate, in default of the parties appointing some one to do it; and in either case, a report will be made to this Court.
 

 The lands being directed to be sold, and converted into money, are considered in this Court as personal estate.
 

 The costs to be paid out of the fund.
 

 Bx the Court,
 

 Decree accordingly.