Gaston, J.
 

 This bill was filed by the plaintiffs claiming to be entitled under the will of Josiah Freeman, deceased, to the testator’s personal estate, against the defendant, who is administrator with the will annexed, for an account. The defendant put in his answer, and the cause was set down to be heard on bill and answer, and then transferred to this Court for hearing. There is no objection made to the taking of an account, but the directions of the Court are prayed for in relation to sundry question's presented by the pleadings, and which should be settled before the account is taken.
 

 The testator gives a pecuniary legacy to his son-in-law, Willie Summerlen, and his daughter Elizabeth, wife of the said Summerlen, in these words: “I give to my soh-in-law,W. S. and to my daughter Elizabeth his wife, twenty-seven.' hundred dollars and notes — twenty-six hundred and seventy*
 
 *74
 
 six dollars of the money and notes embraced in this item have been paid to him — balance due eighty-four dollars to be paid to the said W. S. at my death” The question arises w^iat ^13 surn t0 Pa^ unc^er bequest. Is it the $84 therein stated as the balance, or 24 which would appear to be the balance after deducting irom the gross amount of the legacy what had been advanced in payment thereof? We cannot say with any confidence where the mistake lies— whether in stating the sum already paid, or the sum directed to be paid. There is an error somewhere, which it is not in our power to correct, and we hold that
 
 the sum,
 
 which he finally and explicitly directs to be paid, must be regarded as the legacy thereby bequeathed.
 

 The testator bequeathes sundry negroes to1 his son-in-law, James Bridges, and his daughter' Millicent, the wife of the said Bridges, for life, with limitations over to their children. Among these negroes is a girl Franky — j-who at the time of making the will* had an infant child. It is stated as a fact, that Franky had been put into the possession of Bridges by the testator some time before the birth of this child, and the question is raised, in whom is the property of this infant? It is very clear that the bequest does not
 
 per se
 
 carry the child, because the bequest operates from the death of the testator, and then Franky and her child were two distinct subjects of property, and a disposition of
 
 one is
 
 necessarily confined tff that one. We also hold that the bequest cannot be extended in its operation by any extrinsic matter not therein referred to, for the effect of such extension would be to make that pass by parol, which thelaw will not permit to pass otherwise than by writing. We have held that where a testator gives' by his will a negro, which he therein states to have been previously given by parol, or to have been put into possession of one of his children, the bequest operates as a confirmation of the antecedent imperfect dona-lion, and makes it valid
 
 ab initio.
 
 But this is a construction founded upon the language of the will. The extrinsic •facts are noticed by the Court so far, and so far only, as they are referred to in the will, as explanatory of the testator’s intention. It also seems to us that this child is not included
 
 *75
 
 in any other disposition made by the will. The 11th which is set up as a general residuary clause is not such. It directs a sale of all the testator’s
 
 perishable
 
 property and a disposition of its proceeds; and we are satisfied from the context of the will that this term, perishable, was used in the sense, in which it is generally employed in common parlance and frequently used in legislative acts to designate such goods as are likely
 
 “to
 
 perish, consume or be the worse for keeping.” See Rev. St. c. 46, s. 11, and c. 54, s. 13. The consequence must be, that in regard to this negro child there is a partial intestacy, and it is to be disposed of under our statute of distributions. If there had been no disposition in the will of the mother of the child, the question wpuld have arisen whether, under the act of ] 806, Bridges and his wife might not have claimed both mother and child as an advancement. The late Chief Justice of this Court has decidedly expressed an opinion, that the provision in the 3rd section of the act, that when a person has put a slave in the possession of his child and shall suffer it to remain in such passesion-until his death, “he dying intestate,” the slave shall be considered as an advancement to the child, applies not only in cases of intestacy, properly so called, but also where he dies intestate in regard to that slave. However this may be, on which we explicitly decline to express our opinion, we hold that there is no room in this case for claiming the infant slave as an advancement, because the will does make a disposition of the slave so put into the possession of his son-in-law. The testator has not died
 
 intestate
 
 in regard to that slave.
 

 r The 9th clause of the will is in these words: “It is also my will that Big Sam and Isaac, should be sold and the proceeds equally divided between my legal heirs.” Who are the persons thus designated? Is the wife one? are the children of a deceased child included in the description? And if they be, do
 
 they
 
 take as designated persons
 
 per capita,
 
 or the share of the parent whom they represent? These en-. quiries would open a wide field for speculation, in which great ingenuity and learning have been exerted and expended, but that we feel ourselves bound to follow out the cpn-
 
 *76
 
 struction which in a very similar case was sanctioned by our predecessors in
 
 Croom
 
 v
 
 Herring, et al.
 
 4 Hawks, 393. It was there determined, that when a testator makes an immediate gift of personal property to “his heirs,” be means a gift tfj0se¡ whom the law has appointed to succeed to the personal estate of dead men, who have made no appointment themselves.” If so, it includes the widow — and it includes .the children of a deceased child. We consider it as a consequence resulting from the adoption of this rule of construction, that where personal property is given
 
 simpliciter
 
 to “heirs,” the statute of distributions is to be the guide, not only for ascertaining
 
 who
 
 succeed, and who are “the heirs,” but
 
 how
 
 they succeed, or in what proportions do they respectively take. But as the donees claim not under the statute, but under the will, if the will itself directs the manner and the proportions in which they are to take, the directions of the will must be observed, and the guidance of the statute is to be followed no further than where the will refers to it— that is to say, for the ascertainment of the persons, who answer to the description therein given. The testator has here directed the manner of distribution — -the proceeds are to be “equally divided.” The division directed by the will must be obeyed, and the children of the deceased child take equal shares with the widow and surviving children. It is needless to refer to authorities on this latter point. They are almost innumerable, and have overloaded the subject. The cases most nearly analagous to the present, are in respect to gifts to “relations.” Where it is made to them simpliciter, the persons to take, and the proportions are to be determined by the statute. The leading case for this doctrine, is
 
 Roach
 
 v
 
 Hammond,
 
 Prac. Chanc’y 401. But when the bequest is to relations “to be equally divided between them,” it was settled in
 
 Thomas
 
 v
 
 Hale,
 
 Forrester 241, the authority of which has been generally recognized ever since, that the distribution must be
 
 per capita
 
 among the persons included in the statute. Whatever might be thought of these distinctions, were the matter now a new one, to disregard them at this day would be
 
 quieta movere.
 

 The 11th item of the will is very in artificially expressed,
 
 *77
 
 and we are called upon to declare its true construction. Its words are: “It is my will and desire that all my perishable property be sold at my death and the proceeds thereof, 1
 
 lend
 
 to E-lizabelh Summerlen,MillicentBridgeSjEmmelinejKnight, Joseph John Freeman & grandson Augustus Whitehead, to be equally divided amongst them, and at death I give the said proceeds of my perishable property, named in this item to the children ofthesaid Elizabeth Summerlen, Millicent Bridges, Em-meline Knight, Joseph John Freeman and grandson Augustus Whitehead, to them, their heirs and assigns forever.” Elizabeth died in the life time of her father, the testator, and it is asked of us to declare whether her children are entitled under the ultimate limitation in this clause to the share bequeathed to their mother primarily, and, if not, what is to be done with it. — The first bequest is for life only. This is apparent not merely from the term “lend,” but because of the disposition over made
 
 at death
 
 generally, which literally means the death of all the objects oí that bequest. But these primary legatees take in distinct shares “equally to be divided between them,” and there is no disposition of the share of one at his or her death, (living the others) to any person else, unless it be found in the general limitation over. These considerations lead almost irresistibly to the conclusion, that both where the testator refers to the death of the primary objects of his bounty, and where he gives over, the residue alter death to the children of these same objects, he is speaking of them distributively, and is to be understood as though he had added in each instance the term “respectively” We have indeed no right to interpolate a word to make out a meaning for the testator, but we may understand one without its being used, when the whole scope of the'disposition shews that the purpose, which by that word would have been appropriately expressed, was entertained by the testator, but imperfectly communicated for want of skill. We hold therefore, that by the death of Elizabeth Summerlen, the bequest toller for life of an undivided share in these proceeds was put out of the way, and the limitation over of that share to her children took effect.
 

 The defendant prays advice, whether, with respect to pe
 
 *78
 
 cuniary legacies which are bequeathed for life with remain-over, he is to pay them to the legatees for life, taking security for those ultimately entitled. This is not the proper course. In pecuniary bequests the legatee for life is entitled to the use only, that is to the interest of the money, and, if the executor pays over the principal money to such legatee, he is accountable therefor to the ulterior legatee. Where there are particular bequests of chattels for life, the legatee is entitled to the possession of the chattels themselves, upon, giving an inventory for the benefit of those ultimately entitled.
 

 Augustus Whitehead and the widow are severally entitled to the crop planted andgrowing on the lands devised to them by the testator.
 
 He
 
 is also entitled to the turpentine made on the land devised to him since the testator’s death; but each is bound to make compensation to those, whose laborers were employed for him or her in tending the crop or making the turpentine. As to the turpentine made on
 
 the
 
 rented land, if the testator’s interest in the land is not bequeathed by the will, it falls into the residue of the testator’s perishable property, which is disposed of in the 11th clause.
 

 These are all the declarations which are called for by the parties in their pleadings. The accounts must be taken, and the cause reserved for further directions upon the coming in of the report.
 

 Per Cubiam, Declared and ordered accordingly.