S. D. EVERETT, EXECUTOR, v. MOLLIE GRIFFIN.

(Filed 26 September, 1917.)

1. **Wills—Directions—Sale of Lands—Equity—Conversion—Personalty.**

   A direction by will to sell lands, the proceeds to be "divided between all my children, the heirs of such of my children as may not be living at my death to receive such child's portion," is an equitable conversion of the devise into personal property, under the doctrine that equity regards that as done which ought to be done, and the proceeds of the sale pass to the beneficiaries as such.

2. **Same—Distribution.**

   When no contrary intent appears from the will, and the testator uses the word "heirs" in connection with the distribution of his personal property, it refers to those who take as such under the statute as distributees thereof.

3. **Same—Heirs—Widow—Statutes.**

   A devise of lands to be sold and the proceeds to be distributed among designated children of the testator, as personalty, under the equitable doctrine of conversion, "the heirs of such of my children as may not be living at my death to receive such child's portion": *Held,* the widow of a deceased son of the testator is regarded as an "heir" under our statute,

and in the event of no child of the marriage, etc., she is entitled to one-half of the property her husband would have taken. Rev., sec. 132, subsec. 3.

CIVIL ACTION tried before *Whedbee, J.*, at the February Term, 1917, of NASH.

This is an action by an executor for the construction of a will and for advice as to the distribution of the proceeds of the sale of a tract of land.

On 26 May, 1915, David Everett, at the time domiciled in Nash County, in this State, died seized and possessed of a considerable estate, consisting of both real and personal property, having theretofore, to wit, on 11 July, 1914, made and published his last will and testament; and in his said will the testator above named, having first made provision for his wife, who survived him, and having therein made other specific bequests to certain of his children and grandchildren, in the fifth item thereof, made disposition of certain of his lands as follows:

"Fifth. I direct that my executor hereinafter named advertise for thirty days, and sell at public sale, and make deed thereto to the purchaser at said sale, that portion of my home place, excepted from items '2 and 3' of this will, lying on both sides of the county road and east of a path running north and south, which said path or road leads from the county road in an almost straight line to the back of my home place plantation, said path to be extended or surveyed across my entire home place plantation in the general northerly and southerly direction in which it now runs.

"And I further direct that the proceeds thereof after sale shall be equally divided between all my children, the heirs of such of my children as may not be living at my death to receive such child's portion."

The said testator left surviving a widow, Matilda Everett, and four children, to wit: S. D. Everett, Mollie Griffin, Ida Batts, and J. A. Everett, all of whom are now living and before the court.

The said testator was the father of five other children, whose demise preceded his, to wit: Dora Everett, born in 1871, died in 1872; Debbie Hunter, wife of E. A. Hunter, born in 1869, died in 1905; Lena Dawes, wife of W. R. Dawes, born in 1874, died in 1910; W. A. Everett, born in 1884, died in 1912; and Frank Everett, born in 1879, died 23 April, 1915.

The said Debbie Hunter left surviving a husband, E. A. Hunter, and three children, to wit: Alma Hunter, Mabel Hunter, and Lillian Hunter, all of whom are now living and before the court.

The said Lena Dawes left surviving a husband, W. R. Dawes, whose demise was prior to that of the testator, and five children, to wit: John

Dawes, Russell Dawes, Edna Dawes, George Dawes, and Sallie Dawes. All of said children are now living and before the court.

The said W. A. Everett left surviving a widow (now Jennie G. Gasser, wife of Paul Gasser) and one child, to wit, William A. Everett, all of whom are now living and before the court.

The said Frank Everett left surviving a widow, Matilda Gilliam Everett, the appellant, but no child.

The land has been sold and the proceeds of sale are ready for distribution.

The appellant, Matilda Gilliam Everett, is the widow of Frank Everett, who died before the testator, leaving no child, and she claims that the proceeds of sale are personal property; that the word "heirs" in the fifth item if the will means distributees, and that she is entitled to one-half of the share of Frank under the statute of distributions, and as there were nine children, one-eighteenth of the whole, if Dora Everett, who died before the testator, leaving no child, is considered, or one-sixteenth of the whole if she is not considered. The children and grand-children contend that the word "heirs" means issue or children. His Honor held with the children and grandchildren and entered judgment accordingly, from which Matilda Everett appealed.

*E. B. Grantham for appellant.*
*L. V. Bassett and M. V. Barnhill for appellees.*

ALLEN, J., after stating the case: "The direction to sell land operates as an equitable conversion, and the property or proceeds thereof pass to the beneficiary as personalty." *Lee v. Baird,* 132 N. C., 755.

All of the text-books and the decided cases support this principle, which rests upon the doctrine that equity regards that as done which ought to be done. 3 Pom. Eq. Jur., sec. 1159; Bispham's Eq., sec. 307; 2 Underhill on Wills, 957; *McCabe v. Spruill,* 16 N. C., 189; *Elliott v. Loftin,* 160 N. C., 361.

We must then deal with the proceeds of sale as personal property, and keeping in mind that "when language is used having a clearly defined legal signification, there is no reason for construction to ascertain the intent; it must be given its legal meaning and effect." *Campbell v. Cronly,* 150 N. C., 469. Let us see what is meant by the words "heirs of such of my children as may not be living at my death," and whether the word "heirs" used in connection with the· disposition of personalty has a clearly defined legal signification.

The word is ordinarily used to describe one upon whom the law casts the inheritance upon the death of the person last seized, and it has been frequently construed to mean issue or children, when this appears to

have been the intent of the testator, but when used in connection with the disposition of personalty, and no contrary intent appears, the authorities in this State and elsewhere hold that it refers to those who take under the statute, distributing the personal estates of deceased persons.

The Court says, in *Croom v. Herring,* 11 N. C., 398: "Exclude the idea of blood, and it is matter of surprise how it could be doubted that the widow is not included in the word 'heir,' when applied to personal property. Her claims to the succession are precisely the same with the next of kin; both unknown to the common law, and both given by the same statute."

In *Freeman v. Knight,* 37 N. C., 75: "The ninth clause of the will is in these words: 'It is also my will that Big Sam and Isaac should be sold and the proceeds equally divided between my legal heirs.' Who are the persons thus designated? Is the wife one? Are the children of a deceased child included in the description? And if they be, do *they* take as designated persons *per capita,* or the share of the parent whom they represent? These inquiries would open a wide field for speculation, in which great ingenuity and learning have been exerted and expended, but that we feel ourselves bound to follow out the construction which in a very similar case was sanctioned by our predecessors in *Croom v. Herring,* 11 N. C., 393. It was there determined that when a testator makes an immediate gift of personal property to 'his heirs,' he means a gift to those whom the law has appointed to succeed to the personal estate of dead men, who have made no appointment themselves.' If so, it includes the widow, and it includes the children of a *deceased child.*"

In *Corbett v. Corbett,* 54 N. C., 117, "The word 'heirs' is not appropriate to the disposition of personal property; and when used in reference to it, means those who take by law or under the statute of distribution." In *Brothers v. Cartwright,* 55 N. C., 116, in which land was directed to be sold and the proceeds distributed, "The land directed to be sold by the second clause became personal estate at the death of the testator's widow, when the sale was to be made. *Croom v. Herring,* 11 N. C., 393; Adams Eq., 136. The division of the proceeds was then to take place, and it must be among those of his children who were then living and the heirs of those who had died, either before the testator or after his death and before the death of his widow. By *heirs,* as applied to a bequest of personal estate, it is settled that those are to take who are entitled according to the provisions of the statute of distributions. *Croom v. Herring, ubi supra; Freeman v. Knight,* 37 N. C., 72"; and in *Lee v. Baird,* 132 N. C., 765, in which the executor was directed to sell certain lots and divide the proceeds among all the heirs of the tes-

tator, "The direction to sell operates as an equitable conversion, and the property or proceeds thereof pass to the beneficiaries as personalty. *Mills v. Harris,* 104 N. C., 626; *Benbow v. Moore,* 114 N. C., 263. Therefore, the word 'heirs' must be understood and construed to describe those persons who would take as distributees."

In 40 Cyc., 1464, the author says: "The word 'heirs' in a will, when applied to real estate, primarily means persons so related to one by blood that they would take the estate in case of intestacy; and when applied to personalty, primarily means next of kin or those persons who would take under the statute of distribution in case of intestacy, and this rule applies where the will directs realty to be sold and the proceeds paid to his heirs.'

And in 2 Underhill on Wills, sec. 619, the rule is thus stated: *"The word 'heirs,' in gifts of personal property, means next of kin.* In the case of a gift of personal property made either to the heirs of the testator or to the heirs of another person, the question may arise whether the word 'heirs' is employed as meaning those to whom land descends, which is its ordinary sense, or whether it is used to indicate those only who take the personal property in intestacy. Where personal property *alone* is bequeathed to the heirs, either of the testator or of another person, and the will itself does not show that the testator has employed the word in its technical sense, it may be presumed that the testator has used it to indicate the next of kin, according to the statute, who succeed to the personal property in case of intestacy." See, also, 4 Words and Phrases, 3253, where many decided cases are cited in support of the proposition that the word "heirs" when used in connection with the disposition of personal property means those who take under the statute of distributions.

There is nothing in this will to show a contrary intent, and we must give to the word its accepted meaning. It follows, therefore, that the appellant is entitled to share in the proceeds of sale as a distributee of her husband, and as Dora, one of the children, died before the testator, leaving no child and not having married, and as at the death of the testator there were four children alive and the representatives of four who were dead, including Frank, she is entitled to one-sixteenth of the proceeds, or one-half of one-eighth, the share of Frank, under the statute of distributions (Rev., sec. 132, subsec. 3), which gives to the widow one-half of the personalty when there is no child nor legal representative of a deceased child.

Reversed.