66 S.E.2d 777 (1951)
234 N.C. 173
COPPEDGE
v.
COPPEDGE et al.
No. 97.
Supreme Court of North Carolina.
September 26, 1951.
Petition for Rehearing Denied November 15, 1951.
*778 O. B. Moss, Spring Hope, and Hill Yarborough, Louisburg, for defendants, appellants.
Itimous T. Valentine and Cooley & May, all of Nashville, for defendants, appellees.
L. L. Davenport, Nashville, for E. W. Coppedge, plaintiff, appellee.
DENNY, Justice.
The intent of the testator is the polar star that must guide the courts in the interpretation of a will. Buffaloe v. Blalock, 232 N.C. 105, 59 S.E.2d 625; Elmore v. Austin, 232 N.C. 13, 59 S.E.2d 205; Cannon v. Cannon, 225 N.C. 611, 36 S.E. 2d 17; Holland v. Smith, 224 N.C. 255, 29 S.E.2d 888. This intent is to be gathered from a consideration of the will from its four corners, and such intent should be given effect unless contrary to some rule of law or at variance with public policy. House v. House, 231 N.C. 218, 56 S.E.2d 695; Williams v. Rand, 223 N.C. 734, 28 S.E.2d 247; Heyer v. Bulluck, 210 N.C. 321, 186 S.E. 356.
It is permissible, in order to effectuate or ascertain a testator's intention, for the Court to transpose words, phrases, or clauses. Williams v. Rand, supra; Heyer v. Bulluck, supra; Washburn v. Biggerstaff, 195 N.C. 624, 143 S.E. 210; Gordon v. Ehringhaus, 190 N.C. 147, 129 S.E. 187; Crouse v. Barham, 174 N.C. 460, 93 S.E. 979; Baker v. Pender, 50 N.C. 351.
Likewise, to effectuate the intention of the testator, the Court may disregard, or supply, punctuation. Williams v. Rand, supra; Carroll v. Herring, 180 N.C. 369, 104 S.E. 892; Bunn v. Wells, 94 N.C. 67; Stoddart v. Golden, 179 Cal. 663, 178 P. 707, 3 A.L.R. 1060. Even words, phrases, or clauses will be supplied in the construction of a will when the sense of the phrases, or clauses, in question, as collected from the context, manifestly requires it. Williams v. Rand, supra; Washburn v. Biggerstaff, supra; Gordon v. Ehringhaus, supra; Crouse v. Barham, supra; Howerton v. Henderson, 88 N.C. 597; Dew v. Barnes, 54 N.C. 149; Sessoms v. Sessoms, 22 N.C. 453.
The only question involved in this appeal is whether the beneficiaries, under the residuary clause of the will of J. W. Coppedge, take per capita or per stirpes.
*779 Our Court has experienced considerable difficulty in similar cases. In Stowe v. Ward, 10 N.C. 604, the language construed was as follows: "It is my will, and I do allow that all the remaining part of my estate, both real and personal, be equally divided amongst the heirs of my brother, John Ford, the heirs of my sister Nanny Stowe, the heirs of my sister Sally Ward, deceased, and nephew, Levi Ward." The court was requested to pass upon the manner in which the personal property was to be distributed. It held that the word "heirs" was used in the sense of "children" and as a designation of persons, and directed a distribution of the property per capita. Later, the parties requested the Court to construe the same language with respect to the disposition of the real property, the opinion being reported in Stow v. Ward, 12 N.C. 67. There the Court held the beneficiaries under the will took per stirpes and not per capita. When the second opinion was handed down, the personal property had been distributed per capita, whereupon another action was instituted by Ward v. Stow, 17 N.C. 509, to compel a redistribution of the personal property per stirpes. The Court held that the first opinion construing the will, to the effect that the beneficiaries thereunder took per capita, was correct and overruled Stow v. Ward, 12 N.C. 67.
In Bryant, Adm'r v. Scott, 21 N.C. 155, the residue of the estate was "to be equally divided" among Edith Bryant, Margaret Parker, Julia Valentine, and the children of his daughter Temperance, and the children of a deceased son James. The Court held the division to be per capita, and said: "The intention that the grandchildren should take per stirpes is conjectured from the reasonableness of it, as applied to the state of most families. But when the gift is made under circumstances which exclude all reference to the statute of distribution, that conjecture must be given up; and when to that is added a direction for an equal division among all the donees, no court could feel safe in making an unequal division."
In the instant case, the testator directs that the residue of his estate be divided among his "legal heirs * * * equally, share and share alike as provided by the laws of North Carolina."
We must determine whether the testator intended that upon ascertaining who his "legal heirs" are, as provided by the laws of North Carolina, such heirs should take per capitathat is, equally, share and share alike; or, whether he intended that his "legal heirs" should take the residue of his estate in the proportions provided by law in the same manner as they would take had he died intestate. In the latter case, his heirs would not "share and share alike," neither would they share "equally".
In construing a will, the entire instrument should be considered; clauses apparently repugnant should be reconciled and effect given where possible to every clause or phrase and to every word. "Every part of a will is to be considered in its construction, and no words ought to be rejected if any meaning can possibly be put upon them. Every string should give its sound," Edens v. Williams, Ex'r, 7 N.C. 27; Williams v. Rand, supra; Lee v. Lee, 216 N.C. 349, 4 S.E.2d 880; Bell v. Thurston, 214 N.C. 231, 199 S.E. 93; Roberts v. Saunders, 192 N.C. 191, 134 S.E. 451. But, where provisions are inconsistent, it is a general rule in the interpretation of wills, to recognize the general prevailing purpose of the testator and to subordinate the inconsistent provisions found in it. Snow v. Boylston, 185 N.C. 321, 117 S.E. 14; Tucker v. Moye, 115 N.C. 71, 20 S.E. 186; Macon v. Macon, 75 N.C. 376; King v. Lynch, 74 N.C. 364; Lassiter v. Wood, 63 N.C. 360.
In 40 Cyc. 1464, the author says: "The word `heirs' in a will, when applied to real estate, primarily means persons so related to one by blood that they would take the estate in case of intestacy; and when applied to personalty, primarily means next of kin or those persons who would take under the statute of distribution in case of intestacy, and this rule applies where the will directs realty to be sold and the proceeds paid to the heirs." Everett v. Griffin, 174 N.C. 106, 93 S.E. 474.
*780 One of the leading cases on the question before us is Freeman v. Knight, 37 N.C. 72, where the Court was called upon to interpret an item in Josiah Freeman's will which read as follows: "It is also my will that Big Sam and Isaac should be sold and the proceeds equally divided between my legal heirs". Gaston, J., in speaking for the Court said: "Where personal property is given simpliciter to `heirs,' the statute of distributions is to be the guide, not only for ascertaining who succeeds and who are the `heirs,' but how they succeed or in what proportions do they respectively take. But as donees claim, not under the statute, but under the will, if the will directs the manner and the proportions in which they are to take, the directions of the will must be observed and guidance of the statute is to be followed no further than where the will refers to itthat is to say, for the ascertainment of the persons who answer the descriptions therein given. The division directed by the will must be obeyed." Hill v. Spruill, 39 N.C. 244.
In the cases of Rogers v. Brickhouse, 58 N.C. 301, and Burgin v. Patton, 58 N.C. 425, the Court did not adhere to the decision in Freeman v. Knight, supra. However, the next time the question was presented to the Court for consideration, in Hackney v. Griffin, 59 N.C. 381, Chief Justice Pearson, speaking for the Court, said: "It is settled that the effect of the word `equal' is to require the distribution to be made per capita; Freeman v. Knight, 37 N.C. 72, and, as stated in that case, whatever might be the thought of this distinction, were the matter now a new one, to disregard them at this day would be quieta movere." And again in Tuttle v. Puitt, 68 N.C. 543, the Court speaking through Rodman, J., said: "It is too firmly settled by authority to admit of a question, that where a testator directs his property, whether real or personal, to be equally divided among his heirs, the division must be per capita and not per stirpes." Everett v. Griffin, supra; Wooten v. Outland, 226 N.C. 245, 37 S.E.2d 682.
The general rule in this jurisdiction is to the effect that where an equal division is directed among heirs, or a class of beneficiaries, even though such class of beneficiaries may be described as heirs of deceased persons, heirs or children of living persons, the beneficiaries take per capita and not per stirpes. Stowe v. Ward, supra, 10 N.C. 604; Bryant, Adm'r v. Scott, supra; Freeman v. Knight, supra; Hill v. Spruill, supra; Hackney v. Griffin, supra; Tuttle v. Puitt, supra; Shull v. Johnson, 55 N.C. 202; Hastings v. Earp, 62 N.C. 5; Waller v. Forsythe, 62 N.C. 353; Britton v. Miller, 63 N.C. 258; Culp v. Lee, 109 N.C. 675, 14 S.E. 74; Leggett v. Simpson, 176 N.C. 3, 96 S.E. 638; Ex parte Brogden, 180 N.C. 157, 104 S.E. 177; Burton v. Cahill, 192 N.C. 505, 135 S.E. 332; Tillman v. O'Briant, 220 N.C. 714, 18 S.E.2d 131.
The rule, however, will not control if the testator indicates the beneficiaries are to take by families or by classes as representatives of the deceased ancestor. Wooten v. Outland, supra, and cited cases.
In a bequest, or devise, as well as under the statute of distributions, or the canons of descent, where the beneficiaries take as representatives of an ancestor, they take per stirpes. In re Poindexter's Estate, 221 N.C. 246, 20 S.E.2d 49, 140 A.L.R. 1138. But, when they take directly under a bequest, or devise, as individuals and not in a representative capacity, and the testator provides that the division or distribution shall be in equal proportions, they take per capita. Wooten v. Outland, supra.
The language used by the testator in his will, when considered in the light of our decisions, leads us to the conclusion that he intended for the residue of his estate to be equally divided among his legal heirs, share and share alike, and that the reference to the laws of North Carolina was intended only for the purpose of ascertaining who are his "legal heirs".
This interpretation will give effect to every clause or phrase, and every word in the will. Or, to put it another way, every string will give its sound, Edens v. Williams, supra, and every note will be retained in the melody. To hold otherwise, *781 would require us to ignore the direction of the testator that the residue of his estate is to be divided among his "legal heirs, equally, share and share alike ". The appellants are claiming under the will, and the division directed therein must be obeyed. Freeman v. Knight, supra.
The argument of the appellees to the effect that to allow an equal distribution per capita will result in an unfair and unnatural distribution as between the brothers of the testator and other legatees, will not be permitted to disturb the express provisions in the will which point to a per capita distribution. Johnston v. Knight, 117 N.C. 122, 23 S.E. 92; Burton v. Cahill, supra.
The judgment of the court below is reversed.
VALENTINE, J., took no part in the consideration or decision of this case.
JOHNSON, Justice (dissenting).
It may be conceded that where the words "equally" or "share and share alike" are used to indicate an equal division among a class, they ordinarily import a division per capita. Hobbs v. Craige, 23 N.C. 332; Freeman v. Knight, 37 N.C. 72; Hill v. Spruill, 39 N.C. 244; Henderson v. Womack, 41 N.C. 437; Hackney v. Griffin, 59 N.C. 381; Tuttle v. Puitt, 68 N.C. 543; Culp v. Lee, 109 N.C. 675, 14 S.E. 74; Johnston v. Knight, 117 N.C. 122, 23 S.E. 92; Burton v. Cahill, 192 N.C. 505, 135 S.E. 332. See also 57 Am.Jur., Wills, Sec. 1297; Annotations: 16 A.L.R. 15, p. 22; 78 A.L. R., 1385, p. 1389; and 126 A.L.R. 157, p. 161.
But as stated in 57 Am.Jur., Wills, Sec. 1297, "There is abundant authority, however, to the effect that such expressions do not necessarily require a per capita equality of division but apply just as readily and appropriately to a per stirpes equality. Thus, it has been held that the word `equally' may be satisfied by an equality between a class and legatees named, and that the expression `each to share and share alike' may be satisfied by a division between classes."
Especially is this so when the context imports a per stirpes division (57 Am.Jur., Wills, Sec. 1297; Annotations: 16 A.L.R., 15, p. 25; 78 A.L.R., 1385, p. 1390; and 126 A.L.R., 157, pp. 162 and 163), as where there is a reference in the will to the statutes of descent or distribution, such as a direction that the division shall be "as provided by the laws of the state," and such reference appears from the context to relate not solely to the persons who are to take, but also, or instead, to the proportions in which they are to take. "In such circumstances the distribution will be per stirpes rather than per capita where", as here, the succession is to heirs of different degrees of relationship to the decedent. 57 Am.Jur., Wills, Sec. 1299. See also Annotations 16 A.L.R., 15, p. 29; 126 A.L. R., 157, p. 165; 69 C.J., 287 et seq; Bivens v. Phifer, 47 N.C. 436.
And should there be doubt as to whether the limitation "as provided by the laws of the state", or like expression, is referable to the mode of ascertaining who are to take, or to the proportions in which the beneficiaries are to take, then the following observation of the Iowa court would seem to be in point: "where the question is in the balances of doubt, the doubt is to be solved in favor of a taking per stirpes rather than per capita. One reason for this preference is that such taking is in accord with the laws of descent and in accord with the natural instincts of testators." Claude v. Schutt, 211 Iowa 117, 233 N.W. 41, 43, 78 A.L.R. 1375. See also 57 Am.Jur., Wills, Sec. 1292, p. 855.
In the instant case the disputed item of the will is as follows: "The remainder of my estate is to be divided among my legal heirs, including said Myrtle Coppedge Bunn, equally, share and share alike as provided by laws of North Carolina, * * *."
The limitation "as provided by laws of North Carolina" is interpreted in the majority opinion as referring solely to the mode of ascertaining who are to take, i. e., that this clause "was intended only for the purpose of ascertaining who are his `legal heirs'". However, it would seem *782 that upon a contextual interpretation of the disputed item this qualifying clause may be construed with more force of logic as referring to the manner and proportions in which the testator's "heirs" are to take under the will. Here, it is observed that the first direction of the testator is that the remainder of his estate be divided among "my legal heirs". He does not say "heirs". He qualifies it by saying "legal heirs". This qualification made it perfectly clear who were to take under the will. The testator was a bachelor. His only heirs and next of kin were two living brothers and the children and grandchildren of a deceased brother and a deceased sister. Thus, the job of determining who were the testator's "heirs" was simple. He made it more so when he said "my legal heirs". No further instruction was necessary in order to fix with certainty who were to take. There was no need to add the further instruction "as provided by laws of North Carolina". And this he did not do. To give the will such an interpretation requires that the clause "as provided by laws of North Carolina" be taken out of context and transposed to another part of the sentence.
On the other hand, when the limitation "as provided by laws of North Carolina" is left where the testator put it, at the end of the sentence, it clearly appears to have been intended as a guide for fixing and determining the manner and proportions in which his "legal heirs" shall take under the will. So that, when the testator directed that the residue of his estate (and practically all of his estate falls in the residue) "be divided among my legal heirs, including said Myrtle Coppedge Bunn, equally, share and share alike", he qualified it by saying "as provided by laws of North Carolina", and that would seem to mean equally, share and share alike within classes,per stirpes, as is the law of North Carolina. Such construction is rendered all the more certain by the fact that no comma breaks the cadence of the expression "share and share alike as provided by laws of North Carolina".
The interpretation expressed in the majority opinion seems to take out of context and restrict and unduly minimize the force of this closing limitation of the testator, "as provided by laws of North Carolina". This limitation is salutary. It would seem to be controlling. It makes the case distinguishable from the rule explained and applied in the cases cited in the majority opinion. In 69 C.J., 287, it is stated: "In ascertaining how the parties are to take, the intention of the testator, reached by an examination of the language used as applied to all the surrounding circumstances and conditions present in the testator's mind at the time the will was written, is the determining factor. As a general rule the devisees or legatees will, if possible, be construed to take per capita rather than per stirpes, unless the will shows a contrary intention on the part of the testator, as where the beneficiaries are to take substitutionally. The presumption of per capita distribution is not a strong one, however, and is easily overborne; it will yield to a very faint glimpse of a different intention. In case of doubt, the statutes of descent and distribution should be followed as nearly as possible."
There is compelling natural logic in the view that the testator intended to put the residue of his estate in the lap of the law for division under our statutes of descent and distribution when he directed that it "be divided among my legal heirs, including said Myrtle Coppedge Bunn, equally, share and share alike as provided by laws of North Carolina". Under the language of this will, it is hardly conceivable that he intended an equal per capita division among his fifteen heirs of such varying degrees of kinship, thus placing his two surviving brothers in no stronger position than his two grandnephews.
My vote is to sustain the per stirpes ruling of the court below.