ELIZABETH MOODY BURNEY AND HUSBAND, R. T. BURNEY, AND W. F. MOODY, JR., v. R. W. HOLLOWAY AND WIFE, MAUDE LOUISE HOLLOWAY.

(Filed 28 November, 1945.)

**1. Wills § 24: Trial § 25—**

Since a proceeding to probate a will in common form is *in rem*, it has been held—as far as we know without exception in this jurisdiction—that,

when the issue of *devisavit vel non* has been raised, the proceeding is not subject to nonsuit at the instance of the propounders or other parties concerned.

**2. Estoppel § 4: Wills §§ 24, 39—**

In suit by the seller to require specific performance of the buyer, title being claimed under a will in the probate of which the issue of *devisavit vel non* was raised and a motion of nonsuit made and allowed, the parties at whose instance the nonsuit was allowed being before the court, they will be bound by its judgment on the principle of estoppel.

**3. Mortgages §§ 28, 29, 32a—**

On the foreclosure of a deed of trust, the trustee therein having erroneously canceled the same of record, but after correcting such cancellation of the record, the trustee conveyed to the purchaser under the deed of trust, such correction is sufficient to give the purchaser a good title.

**4. Wills §§ 31, 34—**

The devise of all the income and profits from property, nothing else appearing, carries with it the *corpus*.

**5. Same—**

The settled policy of the law, founded upon strong reason, does not favor a devise, or even a bequest, by implication, permitting it only when it cogently appears to be the intention of the will. Probability must be so strong that a contrary intention cannot reasonably be supposed to exist in testator's mind, and cannot be indulged merely to avoid intestacy.

**6. Wills § 34—**

Where testator's will confided the administration of his property, consisting of realty and capital stock in certain companies, to his son, making him collector of the income for the benefit of himself and his sister, after payment of upkeep, taxes and commissions, without any words limiting the devise to a life estate, and also provided that his stocks should not be sold without the consent of his associates and should be voted as such associates voted their stock, and then, if he should have no grandchildren at the death of his children, "my holding" to become the property of an orphanage—(1) The will is sufficient to convey to the son and daughter a fee in the realty; and (2) the words "my holding" are intended to apply only to the shares of capital stock.

APPEAL by defendants from *Williams, J.,* at May Civil Term, 1945, of WAKE.

The controversy here is over a contract of purchase and sale made between the plaintiffs and the defendants and the validity of the title which the plaintiffs have offered the defendants by tender of a deed which defendants decline to accept. Plaintiffs claim that the title is good and that they are holders in fee under the will of W. F. Moody, Sr., and conveyance of the lands to the testator through sale under a deed of trust. The defendants raised a question as to the title under each instrument.

The record shows that upon the "exhibition" of the Moody will before the clerk of the Superior Court of Wake County, the present plaintiffs filed a caveat. This resulted in a proceeding to probate the will in solemn form, and a negative response to the issue of *devisavit vel non* upon the trial. At the same term of court the Thompson Orphanage made a motion to set aside the verdict and judgment on the grounds of mistake and excusable neglect, which was declined. Still at the same term, the presiding judge set the judgment and verdict aside, *ex mero motu,* in the exercise of his discretion, for other reasons. Subsequently, in a compromise at another term of court, the Thompson Orphanage released its claim for a consideration of $900 "in favor of the estate," asked to be permitted to withdraw its motion to set aside the judgment invalidating the will, and a motion for nonsuit of the proceeding was made and allowed, and the will was subsequently probated in common form.

The plaintiffs, deeming themselves to have a title in fee under the will, entered into a contract with defendants in which plaintiffs agreed to sell, and defendants to buy, the real estate described in the will at the purchase price of $3,000. The plaintiffs tendered a deed to the defendants, which is admittedly sufficient in form to convey the title, but defendants declined to accept the deed and pay for the land as agreed, basing the refusal on the grounds (1) that the testator himself did not have a clear title because he had bought at a sale under a deed of trust which appeared on the record as having been satisfied and canceled; admitting, however, that the substitute trustee had corrected this entry as error, and conveyed to Moody under the terms of the deed of trust; (2) and because, as contended, the plaintiffs did not have a clear title under the provisions of the will.

Plaintiffs brought suit, appropriate pleadings were filed, and the cause came on to be heard by Judge Clawson L. Williams, by consent, without a jury, upon allegations and admissions in the pleadings, and stipulations by the parties. From the judgment requiring them to accept the deed and pay for the land as agreed, the defendants appealed.

The will is as follows:

"Jan. 18, 1940.

"It is my will that my property, after my death, be administered by my son W. F. Moody, Jr., and the income therefrom, after upkeep of the property, taxes and a reasonable commission to the administrator for services, be equally divided between him and his sister Peggy. My stock in the Mitchell Funeral Home and the Commercial Investment Company is not to be sold, without consent of Messrs. A. H. Mooneyham and H. W. Mims and also voted at any time as they vote theirs' and can be sold only as they sell theirs. If I have no grandchildren at the death of my chil-

dren, my holding to become the property of the Thompson Orphanage at Charlotte, N. C."

W. F. Moody, Jr., is a single person, and Peggy Moody Burney is the mother of three children, now living.

*T. Lacy Williams for plaintiffs, appellees.*
*Wilson & Bickett for defendants, appellants.*

SEAWELL, J.   Since a proceeding to probate a will in common form is *in rem,* it has been held—as far as we know without exception in this jurisdiction—that when the issue of *devisavit vel non* has been raised, the proceeding is not subject to nonsuit at the instance of the propounders or other parties concerned.   *In re Will of Evans,* 223 N. C., 206, 25 S. E. (2d), 556; *In re Westfeldt,* 188 N. C., 702, 705, 125 S. E., 531; *Collins v. Collins,* 125 N. C., 98, 34 S. E., 195.   Whether the disregard of this rule results in a void, or merely irregular, judgment we need not inquire, since in either case the proceeding would not be irrevocably retired from the docket against a party or privy whose right to move was still subsisting.   And the Court would not be justified in taking jurisdiction of the rights of parties under a will the validity and testamentary character of which was being tested in another jurisdiction.

However, the parties at whose instance the nonsuit was allowed are before the court, and will be bound by its judgment, on the principle of estoppel, if none other; and other persons who might claim as beneficiaries are not prejudiced by accepting the contest over the will in the former proceeding as concluded.

1. We do not regard the objection relating to the erroneous cancellation of the deed of trust under authority of which the testator held as meritorious.   It was an evident error, based upon the sale and the adequacy of the proceeds, and its correction on the record is sufficient.

2. Under one view of construction which has been presented to us, the will is regarded as silent in several places where express disposition or limitation might be expected, and we are called upon in dealing with the will at these vital points to apply rules of construction which have their inherent limitations and cannot be pressed too far lest the result of our labors should be the making, rather than the construction, of the will.   These aids would indeed be necessary if we assume, *imprimis,* that the Thompson Orphanage is intended as the ultimate taker of all the property of the testator—an assumption which might be too hastily made.   An overall view of the will, keeping in mind the order of the distribution, and paying close attention to the terms used in designating the property referred to at each step of the devises or bequests, will, we think, resolve most of our difficulties.

BURNEY v. HOLLOWAY.

We know from the record that the testator had two kinds of property at least—the real estate concerned in this controversy and shares of stock in the Mitchell Funeral Home and Commercial Investment Company. He confided the administration of his estate to W. F. Moody, Jr., making him the collector of the income from it for the benefit of himself and his sister Peggy, with provision that the brother should be compensated for his services, and the income be divided equally between them. Nothing else appearing, this would be sufficient to convey to them the fee in the real estate, not only by the language *per se*, but under a long line of decisions, clear in their import, if, at times, difficult to apply, holding that the devise of all the income and profits from the property, nothing else appearing, carries with it the *corpus*. *Burcham v. Burcham*, 219 N. C., 357, 359, 13 S. E. (2d), 615; *Schwren v. Falls*, 170 N. C., 251, 87 S. E., 49. Nothing else does appear except in the statement of the contingency on the happening of which the Thompson Orphanage should take whatever the will intended to reserve to it: "If I have no grand-children living at the death of my children."

It is suggested that this contingency has a double aspect; that because the limitation to the Thompson Orphanage is defeated by the existence of grandchildren at the death of the children, the grandchildren living at that time take absolutely by implication.

The settled policy of the law, however, founded upon strong reason, does not favor a devise, or even a bequest, by implication, permitting it only when it cogently appears to be the intention of the will. *Kerr v. Girdwood*, 138 N. C., 473, 50 S. E., 852, 107 Am. St. Rep., 551; *Ferrand v. Jones*, 37 N. C., 633; *McCoury's Exrs. v. Leak*, 14 N. J. Equity, 70; 69 C. J., Wills, sec. 1123. Probability must be so strong that a contrary intention "cannot reasonably be supposed to exist in testator's mind," and cannot be indulged merely to avoid intestacy. *Id.* But even if we adopt that principle here, as a last resort in the absence of dispositive expression, it does not follow that the grandchildren were intended to take any interest in the property generally, or especially the real estate of the testator.

After turning over his property, generally, including, of course, his realty, to the son for handling, and providing that the income should be *equally divided* between him and his sister Peggy, and without any words limiting the devise to a life estate, he proceeds to deal with another sort of property—his holding of stock in the Mitchell Funeral Home and the Commercial Investment Company, in which he had been associated with A. H. Mooneyham and H. W. Mims. He not only forbids the sale of this stock without consent of these associates, but provides that it shall be voted as they vote theirs and sold only as they sold theirs, then provides: "If I have no grandchildren at the death of my children, *my*

*holding* to become the property of the Thompson Orphanage." Is this term *holding* intended to designate *all* his estate or only his stock in the Funeral Home and Investment Company?

The term *holding* is not one usually applied to property in general, but is uniformly and in common usage applied especially to stocks or shares in incorporated companies. Its use otherwise is indeed so rare as to make it strongly improbable that Moody intended by it to refer to anything other than the shares in the Funeral Home and Investment Company of which he had been speaking—the expression to be construed with its immediate context. The probability was, under the restrictions he had placed upon this stock, that it might be intact at the death of his children, and this prompted the form of the bequest.

In Black's Dictionary, a holding is defined: "A piece of land held under a lease or similar tenancy for agricultural, pastoral, or similar purposes."

In Century Dictionary, it is defined: "—specif. land, or a piece of land, held, esp. of a superior; in general, property owned, esp. stocks and bonds (often in plural)."

More discriminately, Webster defines the plural of this word (to which the definition is confined), as: "Property in general, especially stocks and bonds."

From this it appears that the technical use of the word must be ruled out altogether, and we find little, if any, authority for the use of the word in popular speech to justify us in concluding that by it the testator intended to cover anything except the holding of the testator of shares of stock in the concerns specifically mentioned, to which alone the expression is appropriate.

Moody knew how to refer to what he owned and intended to dispose of as property, and did so when he wanted it cared for and equally divided between his two children. He used the term "holding" after the topic shifted to stocks in the Funeral Home and Investment Company, applied to which the term was both appropriate and in common use.

In view of the construction we are constrained to put upon the term used in designating the property made subject to the contingency, it is unnecessary to invoke the presumption of intestacy or the doctrine of implied devise, at least as to the property in controversy, as the terms of the will are sufficient to constitute a devise thereof, in fee, to the plaintiffs.

The judgment of the court below is without error and is
Affirmed.