MARTHA ANDREWS JOHNSON WING AND JANE VIRGINIA ANDREWS
    POWER PHILBRICK v. WACHOVIA BANK & TRUST COMPANY, N.A.,
    SUCCESSOR TRUSTEE, AND AUGUSTA ANDREWS YOUNG, JULIA MARKS
    DOZIER, ALEXANDER A. MARKS, LAURENCE H. MARKS, ALEX B. AN-
    DREWS III, JULIA ANDREWS PARK, MARY S. ANDREWS WORTH,
    GRAHAM H. ANDREWS, JR., F. M. SIMMONS ANDREWS, AUGUSTA
    YOUNG MURCHALL, ELEANOR YOUNG BOOKER, SANDRA JOHNSON
    WALKER, RICHARD T. DOZIER, JR., JANE DOZIER HARRIS, WILLIAM
    M. MARKS III, RALPH STANLEY MARKS, FRANCES MARKS BRUTON,
    JULIA MARKS YOUNG, ELIZABETH MARKS GREEN, JANE MARKS
    CLINE, HAL V. WORTH III, JULIA WORTH RAY, SIMMONS HOLLADAY
    WORTH, JOHN W. ANDREWS, SARA SIMMONS ANDREWS JOHNSTON
    AND MARY GRAHAM ANDREWS. ADDITIONAL PARTIES: JESSICA ANNE
    MURCHALL EDGMON, MELINDA SUSAN MURCHALL, JOHN ALEX-
    ANDER MURCHALL, ROBERT ANDREWS BOOKER, PAUL CURTIS
    BOOKER, PAUL CURTIS BOOKER, MINOR, WILLIAM CONRAD WALKER,
    JR., MINOR, JAMES ALEXANDER WALKER, MINOR, TIMOTHY TODD
    WALKER, MINOR, SHARON VIRGINIA WALKER, MINOR, ANNE
    GILCHRIST DOZIER, MINOR, PATRICIA JANE DOZIER, MINOR, LAURA
    CROMWELL DOZIER, MINOR, JULIA MARKS HARRIS, CHARLES AN-
    DREW HARRIS III, WILLIAM MARK HARRIS, MINOR, WILLIAM M.
    MARKS IV, MINOR, ANN ELVA MARKS, MINOR, RALPH STANLEY
    MARKS, JR., MINOR, RICHARD HUGHES MARKS, MINOR, ALEXANDER
    ANDREWS GRANT BRUTON, MINOR, EDWARD MacCAULEY BRUTON,
    MINOR, FRANCES BRINKLEY BRUTON, MINOR, HAL VENABLE WORTH
    IV, MINOR, KELLY ANDREWS WORTH, MINOR, FRED C. RAY III, MINOR,
    GRAHAM ANDREWS RAY, MINOR, MABLE Y. ANDREWS, SHERMAN
    YEARGAN, TRUSTEE, HOWARD E. MANNING, TRUSTEE, WILLIAM
    HENRY CLARKSON, JR., OUR LADY OF LOURDES CATHOLIC CHURCH,
    JOHN A. McALLISTER, GUARDIAN AD LITEM, S. LEIGH PARK, BRUCE R.
    PARK, MABEL Y. ANDREWS, A. B. ANDREWS IV, GEORGE HAMILTON
    ANDREWS, JAMES ROSE ANDREWS

No. 7910SC201

(Filed 8 January 1980)

**Trusts §§ 8, 10.2— testamentary trusts—silence of will on distribution of corpus—
    no gift by implication—right to income upon death of beneficiary**

    Where testator's will provided that a small portion of the income of a
    testamentary trust should be paid to testator's brothers and sister for life,
    another small portion of the income should be paid to testator's nieces and
    nephews for life, 80% of the income should be paid to testator's great nieces
    and great nephews alive at his death or born within 21 years after his death,
    and the 20% of net income enjoyed for life by testator's brothers, sister,
    nieces and nephews would eventually be added to the income received by the
    great nieces and nephews, the will provided that the trust would terminate at
    the death of the last survivor of testator's brothers, sister, nieces, nephews,
    great nieces and great nephews alive at his death, but the will made no provi-

sion as to the ultimate distribution of the trust corpus following termination of the trust, and the testator was an attorney trained in the law, it was *held* that (1) the will did not create a gift by implication of the trust corpus to the great nieces and great nephews or to their estates, but the corpus passed by intestate succession to testator's heirs at law at the time of his death with possession postponed until the termination of the trust, and (2) upon the death of a great niece or great nephew, the income share of such beneficiary should be paid to the beneficiary's estate until the trust terminates.

APPEAL by defendants Alex B. Andrews III, James Rose Andrews, Minor, by his Guardian Ad Litem, Howard E. Manning, Trustee, and William H. Clarkson, Jr., from *Braswell, Judge.* Judgment entered 10 January 1979 in Superior Court, WAKE County. Heard in the Court of Appeals 23 October 1979.

The testator, Alexander B. Andrews II, a Wake County lawyer, died on 21 October 1946. He left a will dated 21 November 1945 which was duly probated and recorded in the office of the Clerk of Superior Court of Wake County.

Testator was survived by a sister, two brothers, eleven nieces and nephews and twelve great nieces and great nephews. One brother and a nephew had predeceased him.

By 21 October 1967, twenty-one years after testator's death, five more great nieces and great nephews had been born into the Andrews family. In addition, two children were adopted by a nephew and two were adopted by a niece prior to 21 October 1967 but subsequent to testator's death. The same nephew also adopted two more children subsequent to 21 October 1967. All six adopted children were born before 21 October 1967.

The will left the bulk of the estate in trust for the benefit of his family. The trust was to be administered by J. H. Andrews and G. H. Andrews, brothers of the testator. Wachovia Bank and Trust Company, N.A., is the successor trustee. The income after expenses of the trust was to be divided into twenty equal parts and to be annually distributed to testator's brothers and sister, nieces and nephews and great nieces and great nephews alive at his death and such additional great nieces and great nephews as might be born within twenty-one years after his death. The distribution was in the following manner.

His sister was to receive one share (five percent) of the net income "for and during her natural life." Each of his two brothers

was to receive a share (five percent) of the net income "for and during his natural life." A fourth share (five percent) of the net income was to be divided equally among the eleven named nieces and nephews "for and during their lifetime." Upon the death of either his sister or brothers, his or her life share was to be added to the one share "to be divided among the eleven (11) living nieces and nephews." Eventually, the fifteen percent going to siblings would increase the net income share for life going to nieces and nephews to twenty percent. A nephew or niece was to receive a share only during his or her life. On death of a niece or nephew, the division of net income was to be to those remaining alive. Testator further provided:

> "When the number of nieces and nephews shall be reduced by death down to four, then the annual share of any one dying thereafter shall not be divided among those surviving, but then such share or shares shall be added to the sixteen shares to be divided among my great nieces and great nephews."

Eventually, the twenty percent of net income enjoyed for life by the brothers, sister, nieces and nephews would be added to the eighty percent of net income which was distributed annually in the following manner:

> "The income from the sixteen shares shall be equally divided among my great nieces and nephews, now twelve (12) in number, and those who hereafter may be born within twenty-one (21) years after my death, they to share equally with the others."

Testator expressly provided for the increase of the class of great nieces and great nephews who were born within twenty-one years of his death but did not provide any instructions to the trustee as to distribution of the net income following the death of a great niece or great nephew. The will is also silent as to any express provisions or direction to the trustee as to the ultimate distribution of the trust corpus following termination of the trust. The will expressly provides a time for termination of the trust. Testator listed by name all brothers and his sister, nieces and nephews and great nieces and great nephews living at the time he executed the will and provided the trust "shall extend for, and

during, the joint and several lives . . . ." He further provided that the trust would extend

> "for and during the joint and several lives of any other nieces or nephews or great nieces or great nephews born prior to, and alive at the time of my death, and until the death of the last survivor of my brothers and sister, and the last survivor of my nieces and nephews, and the last survivor of my great nieces and nephews (alive at my death), as just referred to, and no longer."

By these provisions of the will, the trust terminates at the death of the last survivor of testator's brothers, sister, nieces and nephews and great nieces and great nephews alive at his death.

The will has been before the courts of this State before. In *Trust Co. v. Andrews*, 264 N.C. 531, 142 S.E. 2d 182 (1965), the Supreme Court held that by the express wording of his will which provided for increase to the class of great nieces or great nephews *born* within twenty-one years of his death, testator did not intend adopted great nieces and great nephews to take a share of the trust income. A decade later, the will was again the subject of litigation when certain members of the Andrews family sought through a declaratory action to have the trust established in the will void for violation of the rule against perpetuities. This Court held the trust did not violate the perpetuities rule. *Wing v. Trust Co.*, 35 N.C. App. 346, 241 S.E. 2d 397, *cert. den.*, 295 N.C. 95, 244 S.E. 2d 263 (1978). At the time the perpetuities suit was brought, all the necessary parties were joined and the successor trustee asserted a claim for affirmative declaratory relief in the form of instructions on how to distribute income properly in the future event of the death of a great niece or great nephew and how to distribute the corpus at the termination of the trust.

The trust was valued as of 20 October 1978 in excess of two million dollars. In the year 1977, the income distribution was $2,174.57 to a niece or nephew resident in North Carolina, $2,251.72 to a nonresident niece or nephew, $4,604.97 to a great niece or great nephew resident in North Carolina and $4,768.73 to a nonresident great niece or great nephew. Seventeen great nieces and great nephews share equally in the trust income provided for them. One great nephew testified that it would make quite a difference to him in his estate planning and the life in-

surance he carried if he knew what vested interest he had in the corpus of the estate. The great nieces and great nephews range in age from the mid-twenties to about age fifty. A vice-president of the successor trustee testified that the trustee would be forced to seek instructions from the court on how to distribute the income of the trust when the first great niece or great nephew of testator dies.

The trial judge concluded as a matter of law that the claim for declaratory relief was properly before the court. He concluded that the adopted children of nieces and nephews of testator have no interest in either the income or corpus of the trust and that the seventeen natural great nieces and great nephews alive at the death of testator or who were born within twenty-one years thereafter own by operation of law the entire equitable interest in the twenty shares of the trust income subject to the outstanding lifetime income of nieces or nephews. He further concluded that upon the death of a great niece or great nephew, the share of annual net income going to him or her would be payable to his or her testamentary beneficiaries or intestate heirs, pending termination of the trust in accordance with its terms. The trial judge ordered that following the death of a great niece or great nephew, the annual income distribution that would have gone to such person, if living, would be paid to the estate or the testamentary beneficiaries or the intestate heirs of that person. The distribution of trust corpus was to be in seventeen equal shares to the testamentary or intestate heirs of each deceased great niece or great nephew and to those great nieces and great nephews who may be alive at the termination. The ultimate distribution was to be made upon the death of the last of testator's nieces and nephews and great nieces and nephews alive at his death.

Certain of the defendants appealed from these conclusions, orders and the specific findings of fact of the trial judge that it was testator's intent to benefit only the class of natural born great nieces and great nephews alive at or born within twenty-one years of his death with both the income of his trust estate and the entire interest in the corpus of the trust estate.

*Vaughan S. Winborne, for plaintiff appellees.*

*Emanuel and Thompson, by W. Hugh Thompson, for defendant appellant, Alex B. Andrews III.*

*Manning, Fulton & Skinner, by Howard E. Manning, Jr., for defendant appellants, Howard E. Manning, Trustee and William H. Clarkson, Jr.*

*Smith, Debnam, Hibbert & Pahl, by J. Larkin Pahl, for defendant appellant, James Rose Andrews, Minor, by Guardian Ad Litem.*

*Joyner & Howison, by Henry S. Manning, Jr., for defendant appellee, Wachovia Bank and Trust Company, N.A.*

*John A. McAllister, for defendant appellees, minor children by Guardian Ad Litem.*

*Maupin, Taylor & Ellis, by W. W. Taylor, Jr., and G. Palmer Stacy III, for defendant appellees, Augusta Andrews Young, Alexander A. Marks, Laurence H. Marks, Mary S. Andrews Worth, Graham H. Andrews, Jr., F. M. Simmons Andrews, William M. Marks III, Ralph Stanley Marks, Frances Marks Bruton, Julia Marks Young, Elizabeth Marks Green, Jane A. Marks (formerly designated as Jane Marks Cline), Hal V. Worth III, Julia A. Worth Ray, Simmons Holladay Worth, John W. Andrews, Sara Simmons Andrews Johnston and Mary Graham Andrews.*

VAUGHN, Judge.

This is a proper case for declaratory relief in the form of instructions to the trustee under the Uniform Declaratory Judgment Act, G.S. Chap. 1, Art. 26. "This article is declared to be remedial, its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered." G.S. 1-264; *see also* G.S. 1-256. A trustee can obtain a declaration of rights concerning any question arising in the administration of a trust. G.S. 1-255(3). Litigation of the issues now raised before us is unavoidable once a great niece or great nephew of testator dies. The income beneficiaries and potential ultimate takers of the corpus are handicapped in making financial and estate planning decisions because of the uncertainty in the ultimate distribution of the trust corpus. The beneficiaries of both the income and corpus of the trust are harmed each time litigation occurs because the trust bears much of the cost of such litiga-

tion. All parties who have an interest in the decision of this case, who are now above sixty in number, are now within the jurisdiction of the Court. None of the diverse parties to the current action has raised on appeal in his or her brief or on oral argument any objection that our ruling on the merits of this action is unnecessary or premature. The relief given by the Uniform Declaratory Judgment Act as adopted in this State is appropriately invoked in this case where litigation appears to be unavoidable. *Consumers Power v. Power Co.*, 285 N.C. 434, 206 S.E. 2d 178 (1974); *Insurance Co. v. Bank*, 11 N.C. App. 444, 181 S.E. 2d 799 (1971).

We must not only try to determine the testamentary intent but must apply the proper rules of law to the dispositive provisions of the will. We must determine testator's intent in two respects: (1) what is to be the ultimate distribution of the trust corpus and (2) what is to happen to the distribution of net trust income to seventeen great nieces and great nephews who qualify for its receipt, once one of them dies. "Probing the minds of persons long dead as to what they meant by words used when they walked this earth in the flesh is, at best, perilous labor." *Gatling v. Gatling*, 239 N.C. 215, 221, 79 S.E. 2d 466, 471 (1954).

I. Distribution of the Trust Corpus

To aid us in determining what testator intended for the distribution of corpus, we are confronted with two alternative theories of law. On one hand, we could construe the silence of the will to indicate that testator did not intend the will to dispose of the trust corpus after the termination of the trust and conclude that it passed by intestate succession to his heirs at law at the time of his death with possession postponed until the termination of the trust. The property would then be vested with the takers by intestacy at his death as provided by the laws of North Carolina on 21 October 1946 and their respective heirs. This is the theory of the case put before us by those appellants who have adopted children. On the other hand, the will might be construed to create a gift by implication of the corpus of the estate to the great nieces and great nephews or to their estates in the proportion of their income interests at the time of termination of the trust. This is the theory of the case put to us by appellees who

now receive the trust income and who do not have adopted children.

The doctrine of bequest or gift by implication is a doctrine long recognized in this State. *Finch v. Honeycutt*, 246 N.C. 91, 97 S.E. 2d 478 (1957); *Efrid v. Efrid*, 234 N.C. 607, 68 S.E. 2d 279 (1951); *Burney v. Holloway*, 225 N.C. 633, 36 S.E. 2d 5 (1945); *Burcham v. Burcham*, 219 N.C. 357, 13 S.E. 2d 615 (1941); *Ferrand v. Jones*, 37 N.C. 633 (1843); 4 Bowe-Parker, Page on Wills, § 30.18 (4th ed. 1961). Quoting in part from Underhill on Wills, our Supreme Court has said:

> " 'If a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express or formal words, the court may supply the defect by implication, and so mould the language of the testator as to carry into effect, so far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared.' 1 Underhill on Wills, section 463. It is generally held that a devise of the use, income, rents, profits, etc., of property, amounts to a devise of the property itself, and will pass the fee unless the will shows an intent to pass an estate of lesser duration." *Burcham v. Burcham*, 219 N.C. at 359, 13 S.E. 2d at 616.

Along with the doctrine of gift by implication, there is the presumption that a testator does not intend to die intestate as to any portion of his estate. *Poindexter v. Trust Co.*, 258 N.C. 371, 128 S.E. 2d 867 (1963). The intent of the testator is the polestar in our analysis of a will. *Wilson v. Church*, 284 N.C. 284, 200 S.E. 2d 769 (1973).

Those parties seeking to have the corpus of the trust estate vest in the hands of those seventeen great nieces and great nephews now receiving income contend there is sufficient evidence on the face of the will to indicate this is the manifest intent of testator. At no point does he express what these parties contend was his intent. They would imply his intent from the following factors. (1) The gifts of income from the trust to siblings, nieces and nephews were expressly limited to life estates by phrases "for and during [his/her] natural life" or "for and during their lifetime." The gift of income to great nieces and great nephews on the other hand has no income for life only restric-

tions. A survival requirement is never implied. Thus, the income until termination of the trust will go in proportion to the estate or heirs of a great niece or great nephew dying before termination of the trust. (2) The trust income was initially eighty percent directed to the great nieces and great nephews and the remaining twenty percent eventually is to benefit this class. This was a residuary trust holding the great bulk of the estate. The appellees would imply that as all of the income went, so went all of the corpus in the mind of testator. (3) The gifts of income to great nieces and great nephews were to a class which he wanted treated equally. It was a per capita distribution and not per stirpes. By intestacy, there would be a per stirpes division of the property in the generation of great nieces and great nephews inconsistent with the per capita distribution of income to that generation. (4) Intestacy would place an interest in the estates of testator's brothers and sister and the children of one brother who predeceased him which would be inconsistent with the trust income provision to these parties. (5) This is a residuary trust into which the entire estate was placed after taxes, expenses and specific bequests.

All of these arguments for implying a gift of corpus come from express treatment of the income. The simple fact is that nothing is said by testator about the corpus. The silence we think is controlling in this case.

We must remember that we are dealing with the will of a man lettered in the law and familiar with the technical sense the law gives to words. Where the doctrine of bequest by implication is applied, courts are generally involved with a different set of circumstances. We do not have here a case where a testator is under an erroneous impression as to the state or quality of his property holdings. *See, e.g., Efrid v. Efrid, supra.* It is not a case of a layman misusing legal words or inartfully expressing himself. *See, e.g., Burcham v. Burcham, supra.* It is not a case of construing words in their lay or legal meanings. *See, e.g., Poindexter v. Trust Co., supra.*

In certain cases, a trust beneficiary has been given the entire beneficial interest of the trust even though the instrument speaks only of income to him. *Poindexter v. Trust Co., supra.* "[T]he devise of all the income and profits from the property, nothing

else appearing, carries with it the corpus." *Burney v. Holloway*, 225 N.C. at 637, 36 S.E. 2d at 7-8. "Where there is a gift of income *without limitation of time*, express or implied, there is a gift of the entire beneficial interest." 2 Scott, The Law of Trusts, § 128.2, p. 1013 (3d ed., 1967) (emphasis added). In testator's will, there is something else. It is an express termination of the trust at the death of the last of his brothers, sister, nieces and nephews, great nieces and great nephews alive at his death. While the income may be paid well into the next century, it is not without limitations.

To apply the doctrine of bequest by implication, the probability that this was the intention of the testator "must be so strong that a contrary intention 'cannot reasonably be supposed to exist in testator's mind,' and cannot be indulged merely to avoid intestacy." *Burney v. Holloway*, 225 N.C. at 637, 36 S.E. 2d at 8; *see also Ravenal v. Shipman*, 271 N.C. 193, 155 S.E. 2d 484 (1967). In this case, a contrary intention can be reasonably supposed that this lawyer-testator intended a partial intestacy. By adopting the judicial doctrine of bequest by implication, we would be adding words to the will that he neither expressed nor implied to the point that we would express them for him. We would be rewriting his will.

Testator made no further distribution of the property after the termination of the trust and its income. The rule is sometimes expressed to the effect "that a testamentary gift of the income or interest of a fund without limitation as to time is, where no other distribution is made thereof, a gift of the principal." 80 Am. Jur. 2d Wills § 1389, p. 464. Clearly in this case there is a time limitation. We do not make as much of the failure to make further distribution in the case of this will as we would in that of a person not of testator's profession. The silence of this testator, trained in the law, implies more than any judicial construction tacked on to his express words might imply. The absence of express provision on the distribution of the corpus leads us to conclude that he intended it to pass by intestate succession at the termination of the trust.

"[W]here a will is reasonably susceptible of two constructions, the one favorable to complete testacy, the other consistent with partial intestacy, in application of the presumption,

the former construction will be adopted and the latter rejected. This does not mean, however, that one must choose between a will or no will. A testator may elect to dispose of part of his property by will and leave the remainder for disposition as in case of intestacy." *Ferguson v. Ferguson*, 225 N.C. 375, 377-78, 35 S.E. 2d 231, 232-33 (1945) (citations omitted); *see also Kidder v. Bailey*, 187 N.C. 505, 122 S.E. 22 (1924); *McCallum v. McCallum*, 167 N.C. 310, 83 S.E. 250 (1914); *Galloway v. Carter*, 100 N.C. 111, 5 S.E. 4 (1888).

We hold that the remainder interest in the corpus of the trust, which was the bulk of the estate, passed by intestate succession to the heirs of testator with possession postponed until termination of the trust. The disposition of property of a person dying intestate is governed by the statutes in force at his death. *Wilson v. Anderson*, 232 N.C. 212, 59 S.E. 2d 836 (1950). Thus, under the rules of descent and distribution, then in effect, the three living siblings each inherited one quarter of the corpus. The three children of the brother who predeceased testator inherited the remaining quarter. G.S. 28-149, Rule 5 and G.S. 29-1 (repealed 1959 N.C. Sess. Laws c. 879); *In Re Estate of Poindexter*, 221 N.C. 246, 20 S.E. 2d 49 (1942). Whether adopted great nieces or great nephews share in the corpus of the trust depends on the disposition made for them by the intestate takers of testator from whom they inherit.

II. Distribution of Trust Income on the Death of an Income Beneficiary

In the judgment appealed from, the trial judge concluded as a matter of law that the death of a great niece or great nephew should not terminate his or her right to income but that such should continue to his estate, intestate heirs or testamentary beneficiaries until the termination of the trust. This portion of the order has not been briefed or argued by appellants.

"Where by the terms of the trust the income is payable to two or more beneficiaries for life, and it is provided that on the death of the survivor of the life beneficiaries, or on the happening of some other event, the trust shall terminate, and the principal shall be distributed among designated persons, but there is no express provision as to the disposition of the income payable to a life beneficiary in the event of his

death prior to the time fixed for the termination of the trust, the question arises what disposition should be made of such income. The answer ultimately depends upon the manifestation of intention of the settlor. Four possible dispositions might be made of the share of the income of the deceased beneficiary: (1) it might be paid to the surviving life beneficiaries; (2) it might be paid to the estate of the deceased beneficiary; (3) it might be paid to the estate of the settlor as property not disposed of by his will; (4) it might be accumulated and on the termination of the trust paid to the persons entitled to the principal of the trust estate." 2 Scott, The Law of Trusts, § 143 p. 1097.

The trial judge's order picked the second of these four alternatives and, in this, he was correct.

Testator provided for increase to the class of great nieces and great nephews receiving income from the trust within the limits of the rule against perpetuities but established no survivorship requirement. *Wing v. Trust Co.*, 35 N.C. App. 346, 241 S.E. 2d 397, *cert. den.*, 295 N.C. 95, 244 S.E. 2d 263 (1979). We will not imply a condition of survivorship. Simes, Law of Future Interests, § 103 (2d ed. 1966). He also gave an express time to terminate the trust. In light of these provisions, testator intended that income could be paid to the estate of a deceased beneficiary until the trust terminated. *See Thompson v. Martin*, 281 Mass. 41, 183 N.E. 51 (1932); *contrast In re Hicks' Estate*, 345 Mich. 448, 75 N.W. 2d 819 (1956). The handling of the trust income going to brothers, sister, nieces and nephews reinforces this reading of the will. In providing for these parties, testator meticulously provided for conditions of survivorship and how income was to be paid over in the event of a death. The fact that he has not done so with the distributions to great nieces and great nephews is an indication that the income should not pass to other life beneficiaries on the death of any income beneficiary or to the corpus beneficiaries until the trust terminates.

In conclusion, the trustee should be governed by the following.

(1) Until termination of the trust, the trust income, in a portion which should ultimately reach one hundred percent, is to be paid equally to the seventeen great nieces and great nephews

during their natural lives and, on death, to their respective heirs or beneficiaries.

(2) When the last niece, nephew, great niece or great nephew alive at testator's death dies, the trust will terminate and the assets will be distributed to the intestate takers of Alexander B. Andrews II, or those who take through these intestate takers.

Reversed and remanded.

Judges PARKER and HILL concur.