L. A. BUFFALOE AND PEARL W. BUFFALOE, HIS WIFE, v. L. W.
BLALOCK, JR.

(Filed 24 May, 1950.)

**1. Wills § 31—**

The intent of testator as gathered from the four corners of his will must
be given effect unless contrary to some rule of law or at variance with
public policy.

**2. Wills § 33c—**

A devise to testator's four sons, but if any one of them should "fail to
become a father of a living child by lawful wedlock" his share should
revert to the estate, *is held* to devise a fee simple to each son, defeasible
upon his death without having had a living child born in wedlock, but
which becomes a fee simple absolute as to each son upon the birth to him
of a living child in wedlock.

**3. Same: Wills § 38—Possibility of reverter held to have passed to resid-
uary legatees and their deed estops them and their heirs.**

By residuary clause, testator devised the remainder of his estate to his
four sons, his sole heirs at law, each to take a defeasible fee to become
absolute as to each upon the birth of a living child in wedlock. *Held:*
Testator intended to dispose of all the residue of his estate in the resid-
uary clause, including any reversion, and therefore if the fee of any one
of the sons should be defeated, the reversion would go to the estate and
pass under the residuary clause to the other sons or their heirs, who would
not take as purchasers under the will but by descent from the devisee, and
therefore deed executed by the four sons conveys the fee simple absolute,
since the deed of each would estop him or his heirs from claiming any
reversionary interest if such interest should thereafter arise.

APPEAL by defendant from *Harris, J.,* at Chambers in Raleigh, N. C.,
7 January, 1950. From WAKE.

Controversy without action submitted on an agreed statement of facts.

The plaintiffs and the defendant entered into a written contract, on
19 October, 1949, by the terms of which the defendant agreed to purchase
from the plaintiffs a certain lot, described in the agreement, for the sum
of $1,000.00, and the plaintiffs agreed to sell and convey the property to
the defendant by deed conveying a good and indefeasible fee simple title
thereto.

The land in question is a part of the estate of George R. Parker, who
died testate in 1929. His will was duly admitted to probate on 16 Janu-
ary, 1929.

The residuary devise under which the property in question passed,
reads as follows:

"Ninth: After the above bequests have been properly provided for all
the property belonging to my estate shall be apportioned equally among

my children: Alan Phares, Joseph Yates, Harry Oliver and William Carey. If any one of my children fail to become the father of a living child by lawful wedlock then in that event the property of that son or those sons who fail to become parents as above set out shall revert to my estate at the death of any son who shall fail to become the father of a living child born of lawful wedlock."

On 10 October, 1949, the four sons of George R. Parker (with the spouses of those who were married), executed a deed in fee simple for the said George R. Parker Farm to the plaintiffs, L. A. Buffaloe and wife, Pearl W. Buffaloe, said deed containing full covenants of warranty and containing in the granting clause and in the *habendum* the specific language, "together with and including all interests and rights of the parties of the first part, both vested and contingent, present and prospective, and including remainders, reversions and any other rights and interest which the parties of the first part may now have or may hereafter acquire in said George R. Parker Farm."

At the time of the execution of the above mentioned deed to L. A. Buffaloe and Pearl W. Buffaloe, dated 10 October, 1949, Alan Phares Parker, Joseph Yates Parker and Harry Oliver Parker each had "become the father of a living child by lawful wedlock," but no issue has yet been born to William Carey Parker.

The four sons of George R. Parker, namely, Alan Phares Parker, Joseph Yates Parker, Harry Oliver Parker and William Carey Parker, were at the time of the death of George R. Parker, and are now the sole heirs at law of George R. Parker.

Subsequent to the execution and recordation of the deed dated 10 October, 1949, to L. A. Buffaloe and Pearl W. Buffaloe, the said plaintiffs executed and tendered to L. W. Blalock, Jr., a deed for a portion of said George R. Parker Farm, pursuant to the contract of purchase and sale therefor, but said deed was refused by L. W. Blalock, Jr., on the ground that it did not convey the full fee.

The defendant admits the deed tendered would convey a good title to the three-fourths undivided interest in said property, but he contends that Alan Phares Parker, Joseph Yates Parker, Harry Oliver Parker and William Carey Parker (together with the spouses of those that are married) had no power or authority to convey to the plaintiffs an indefeasible title to the remaining one-fourth undivided interest in said property, and that therefore the deed tendered by the plaintiffs to the defendant does not convey an indefeasible fee simple title.

His Honor held the plaintiffs are vested with a good and indefeasible fee simple title to the lands described, and that the deed tendered by plaintiffs to the defendant will convey to and vest in the defendant a good

and indefeasible fee simple title to said premises, and entered judgment accordingly.

. The defendant appeals and assigns error.

*A. L. Purrington, Jr., and Weathers & Young for plaintiffs.*
*C. C. Cunningham for defendant.*

DENNY, J.   The intent of the testator is the polar star that must guide the courts in the interpretation of a will.   *Elmore v. Austin, ante,* 13; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17; *Holland v. Smith,* 224 N.C. 255, 29 S.E. 2d 888.   This intent is to be gathered from a consideration of the will from its four corners, and such intent should be given effect, unless contrary to some rule of law or at variance with public policy. *House v. House,* 231 N.C. 218, 56 S.E. 2d 695; *Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247; *Culbreth v. Caison,* 220 N.C. 717, 18 S.E. 2d 136; *Smith v. Mears,* 218 N.C. 193, 10 S.E. 2d 659; *Heyer v. Bulluck,* 210 N.C. 321, 196 S.E. 356.

A brief review of the provisions of the last will and testament of George R. Parker, deceased, will be helpful in arriving at his intent, as set forth in the Ninth Item thereof, which Item contains the provision upon which the validity or invalidity of the tendered deed must be determined.

The testator made provision for the education of his children, being the four sons named in the residuary clause of his will, "to the extent of an A.B. graduate course of Wake Forest College or some other college of equal standing."   He also expressed the wish that his estate remain as an undivided whole until all of his children shall have been educated as provided therein.   ·He directed that the income from the estate should be used in defraying the expenses of his wife and such of his children as might not have finished their college education as provided for in the will, as far as might be necessary, the remainder to accumulate for the benefit of his estate.   The will then contains the following provisions:

"SIXTH: After my children shall have been educated as above set out, then the remainder of my estate shall be divided as follows:

"SEVENTH: To my wife I give and bequeath a one fifth interest in all my personal property and a life estate of a one third interest in all my real estate.

"EIGHTH: To my sister Annie I bequeath the house now owned by me, situated on the South side of and known as number 307 West South Street, Raleigh, N. C., for the term of her natural life.   At her death this property shall revert to my estate."

It seems clear to us that the testator intended to dispose of all the residue of his estate, under the provisions contained in the residuary

clause, including any part of his estate that might revert thereto under the terms of the will.

It is conceded that William Carey Parker was the only son and heir of the testator who had not become the father of a living child in lawful wedlock, when the deed was executed on 10 October, 1949, purporting to convey the George R. Parker Farm to the plaintiffs. Consequently, at the time of the execution of this deed, Alan Phares Parker, Joseph Yates Parker and Harry Oliver Parker, were seized and possessed of a three-fourths undivided interest in the property conveyed, in fee simple. And William Carey Parker was seized and possessed of a one-fourth undivided interest in said property in fee simple, subject to be divested at his death, if during his lifetime he should "fail to become the father of a living child by lawful wedlock." It follows then that each of the other sons having become the father of a living child born in lawful wedlock, held his interest in fee simple and also a contingent interest in the one-fourth undivided interest of William Carey Parker.

It is quite clear that the real question for determination is whether or not the holders of the contingent interest could convey such interest to these plaintiffs, and by their deed estop themselves and their heirs from claiming any interest therein, should William Carey Parker die without having become the father of a living child born in lawful wedlock.

The appellant takes the position that the heirs of the grantor who may be eligible to take, at the death of William Carey Parker, should he die without having become a father, as contemplated in the will, cannot be ascertained until the death of William Carey Parker, the first taker, citing *Burden v. Lipsitz,* 166 N.C. 523, 82 S.E. 863, and *Daly v. Pate,* 210 N.C. 222, 186 S.E. 348.

In *Burden v. Lipsitz, supra,* the devise was in the following language: "I give to my son, John Henry Burden, a fee-simple title to the tract of land on which I live, it being all the land I own, provided he has a child or children; but if he has no child, then I give him the said land during his life, and to his widow if he leaves one surviving, during her widowhood, and then the said land shall go in equal portions to my heirs at law as if I had made no will." The court very properly held that upon the nonhappening of the contingency named, the heirs of the grantor took directly from the testator as his heirs at law and that the contingent event by which the estate was determined must be referred, not to the death of the devisor, but to the death of the first taker. Revisal, sec. 1581, now G.S. 41-4. And in *Daly v. Pate, supra,* the testator devised to his daughter and her heirs certain lands, in fee simple absolute should she leave any child or children surviving her, but should she not leave any child or children surviving her, "then it is my will and desire that said lands shall revert to my estate and be equally divided as best it may

be between my then living nephews and nieces." Clearly the "then living nephews and nieces" could not be ascertained until the death of the first taker.

The above cases are not controlling on the facts presented on this appeal. The reversion of the interest of William Carey Parker, if and when it occurs, will not revert to the estate of the testator to be divided among his heirs at law, as if he had made no will, neither will it revert to his estate to be divided among his then living heirs at law. On the contrary, it will revert to the estate of the testator and pass under the residuary clause of his will. And his four sons being the sole residuary legatees and devisees under the will, the one-fourth undivided interest will pass to the other three sons of the testator, or through them by descent to their heirs, if any of them predecease William Carey Parker. *Whitesides v. Cooper,* 115 N.C. 570, 20 S.E. 295. And since such heirs must take by descent from the devisees and not directly from the devisor as purchasers, the holders of the contingent estate did have the right to convey such estate to the plaintiff. *Bodenhamer v. Welch,* 89 N.C. 78; *Kornegay v. Miller,* 137 N.C. 659, 50 S.E. 315; *Hobgood v. Hobgood,* 169 N.C. 485, 86 S.E. 189; *Williams v. Biggs,* 176 N.C. 48, 96 S.E. 643; *Grace v. Johnson,* 192 N.C. 734, 135 S.E. 849; *Croom v. Cornelius,* 219 N.C. 761, 14 S.E. 2d 799.

In *Williams v. Biggs, supra,* the lands were devised to the four sons of the testator, but with a provision to the effect that if either one of the sons should die without a lawful heir, then his share should descend to the surviving sons and their heirs forever. One of the sons died without issue and the survivors undertook to convey the property in fee simple. This Court held that the three surviving brothers could convey a good title to the property. *Walker, J.,* speaking for the Court, said: "In any view of the case, the estate was vested absolutely either in all the surviving brothers, or ultimately will so vest in some one or more of them. If any one of them should die, leaving heirs, his share would descend to such heirs, who, though, would be bound by his deed as the warranty in the deed of the ancestor will conclude and estop or rebut the heir who takes by descent. Of course, where the heirs, issue or children, are so designated as to take by purchase, under the terms of the will, there is no estoppel or rebutter as they do not take from their ancestor by descent, but directly from the devisor as purchasers. *Whitesides v. Cooper, supra.* But whether all the sons die without leaving issue, and others die leaving issue, all parties have joined in the deed who have or will have the title to the land. We are of opinion that the plaintiff has derived his title from parties who, if not owners of the land at the time they conveyed it to him, will eventually become the owners in fee simple absolute, and therefore that all interest therein has passed to him. It follows that the

deed tendered to the defendant will convey to him a good and indefeasible title."

To the same effect is *Hobgood v. Hobgood, supra,* where this Court, speaking through *Hoke, J.,* said: "When the holders of a contingent estate are specified and known, they may assign and convey it, and, in the absence of fraud or imposition, when such a deed is made, it will conclude all who must claim under the grantors, even though the conveyance is without warranty or any valuable consideration moving between the parties."

In the case of *Croom v. Cornelius, supra,* the testator devised his property in these words: "I wish my estate of whatever nature equally divided among the aforesaid four . . . if there are no surviving children to go not to any inlaws or other outsiders, but revert to my other children or grandchildren." The plaintiff, one of the devisees, obtained a deed for the devised lands, duly executed by all the other devisees under the will. This Court held the plaintiff had a good title to the property, since he held a deed from all the other devisees under the will, to whom in the event of the happening of the contingency the land would descend; and that they and their heirs would be estopped by their deed.

The case before us is not like *Burden v. Lipsitz, supra,* and *Daly v. Pale, supra,* where the ultimate takers were not known and could not be ascertained until the preceding estate terminated. It makes no difference when the reversion takes place, the ultimate takers are known and since their heirs will take by descent, if any one or more, or all of them, are dead when the property reverts, if it ever does, such heirs will be estopped by the deed of the ancestor or ancestors. Moreover, if William Carey Parker becomes the father of a living child born in lawful wedlock, he and those who may claim under him will be bound by his warranty in the deed to these plaintiffs.

Furthermore, it so happens that if the property involved herein reverts to the estate of the testator, it will descend in the same channel and by the same line of descent as it would if there were no defeasance clause in the will and William Carey Parker should die intestate. *Croom v. Cornelius, supra; Hales v. Renfrow,* 229 N.C. 239, 49 S.E. 2d 406.

In our opinion, the deed tendered by the plaintiffs will convey a good title to defendant. Hence, the judgment of the court below is

Affirmed.