MAUDE GRAY EFIRD v. PAUL H. EFIRD, JR., JOHN E. EFIRD, MAY GRAY EFIRD MASON and JENNIE ANN EFIRD ALLEN, Individually and as Executors Under the Last Will and Testament of PAUL H. EFIRD, SR.

(Filed 12 December, 1951.)

**1. Wills § 31—**

The intention of testator as gathered from the entire instrument is the primary object in interpreting the will, and must be given effect unless contrary to some rule of law or at variance with public policy.

**2. Wills § 33a—Language of will in this case held sufficient to constitute devise by implication.**

Title to one of the lots constituting the home place was in testator's name individually. In two items he referred to the property as held by him and his wife as tenants by entirety and stated that she would automatically own the estate, and gave her all furniture and household effects therein, and also bequeathed to her a part of his general estate. By later item he stated that "after the above properties which have been given to my wife" the remainder should be divided equally among his four children. *Held:* There was not merely an incorrect description of an instrument extrinsic to the will but also language evincing the unmistakable intent of testator that his wife should have the home place, and such intent must be given effect.

APPEAL by defendants from *Patton, Special Judge,* October Civil Term, 1951, of MECKLENBURG.

This is an action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, G.S. 1-253, *et seq.,* for the construction of certain provisions contained in the last will and testament of the late Paul H. Efird, Sr., which instrument has been duly probated in the office of the Clerk of the Superior Court of Mecklenburg County, North Carolina. The pertinent parts of the will read as follows:

"ITEM III. Upon my death, if my wife, Maude Gray Efird, be living, she will automatically own our home place located at 224 Hermitage Road, Charlotte, North Carolina, and any other real estate that she and I may own as tenants by the entirety. I give and bequeath to my said wife, Maude Gray Efird, any automobile or automobiles that I may own at the time of my death and also all of my right, title and interest in and to all furniture, household effects and other tangible property contained in our family residence, to be hers absolutely and forever.

"Item IV. After the personalty hereinabove bequeathed to my wife has been given to her, and she has received the real estate that may be owned at the time of my death by her and me as tenants by the entirety, and after the debts of my estate shall have been paid from the *corpus* of my general estate, but before any death, inheritance or estate taxes shall have been considered or taken into effect, my said wife, Maude Gray Efird, shall have, and I hereby give, bequeath and devise to her outright, a two-sixths interest in all of my estate.

"Item V. After all of my debts shall have been paid, and after the above properties shall have been given to my wife, and after all death, estate, inheritance or other similar taxes and duties shall become payable with respect to any property passing to any beneficiary hereunder or with respect to the proceeds of any policy or policies of insurance on my life or with respect to any other property which shall be included in my gross estate, for the purpose of such taxes and any and all other taxes properly chargeable against my estate, or any beneficiary hereunder, shall have been paid, from what is then left in my estate, no part of the said taxes to be charged to any particular beneficiary,—then what remains of my estate shall be divided one-fourth to my daughter, May Gray Efird Mason; one-fourth to my daughter, Jennie Ann Efird Allen; one-fourth to my son, Paul H. Efird, Jr.; and one-fourth to my son, John E. Efird. If any one of these, my children, shall predecease me, then the portion of my estate that would have gone to such deceased child of mine shall go to his or her issue, the issue of any deceased child to take what his or her parent would have taken had he or she not predeceased me."

The controversy arises out of the fact that the testator was under the impression that his home place located at 224 Hermitage Road, Charlotte, North Carolina, where he and his wife, the plaintiff, had lived for more than twenty-five years prior to his death, on 23 September, 1948, was owned by them as tenants by the entirety, when as a matter of fact, one of the two lots comprising the home place, being Lot 1 in Block 3A, of Myers Park, and the one on which the residence is located, valued at $30,000, had not been held by the parties as tenants by the entirety, but by Paul H. Efird, Sr., individually. The other lot adjacent thereto which is vacant, except for the outhouses and garage located thereon, was conveyed to and held by Paul H. Efird and his wife, Maude Gray Efird, as tenants by the entirety.

When this cause came on to be heard, the parties waived a trial by jury and agreed that the court should hear the evidence, find the facts, and enter judgment. The court found as a fact, and concluded as a matter of law, that Paul H. Efird, Sr., by his last will and testament devised to his wife, Maude Gray Efird, among other things, Lot 1 in Block 3A of Myers Park, together with the house located thereon, and that she is the

owner thereof in fee simple. The court further held that no part of the value of the aforesaid Lot 1, together with the house located thereon, shall be charged to the said Maude Gray Efird in arriving at the "two-sixths' interest" in all of his estate, bequeathed and devised to the wife in Item IV of the aforesaid last will and testament.

From the judgment so entered, the defendants appeal, and assign error.

*David J. Craig, Jr.,* for defendants, appellants.
*Pierce & Blakeney* and *Richard E. Wardlow* for plaintiff, appellee.

DENNY, J. The primary object in interpreting a will is to ascertain what disposition the testator intended to make of his estate. *Bank v. Brawley,* 231 N.C. 687, 58 S.E. 2d 706; *Carroll v. Herring,* 180 N.C. 369, 104 S.E. 892. Consequently, the intention of the testator is the polar star that must guide the courts in the interpretation of a will. *Buffaloe v. Blalock,* 232 N.C. 105, 59 S.E. 2d 625; *Elmore v. Austin,* 232 N.C. 13, 59 S.E. 2d 205; *Cannon v. Cannon,* 225 N.C. 611, 36 S.E. 2d 17; *Holland v. Smith,* 224 N.C. 255, 29 S.E. 2d 888. This intention is to be gathered from a consideration of the will from its four corners, and this intention should be given effect, unless contrary to some rule of law or at variance with public policy. *Coppedge v. Coppedge,* 234 N.C. 173, 66 S.E. 2d 777; *House v. House,* 231 N.C. 218, 56 S.E. 2d 695; *Williams v. Rand,* 223 N.C. 734, 28 S.E. 2d 247; *Heyer v. Bulluck,* 210 N.C. 321, 186 S.E. 356.

Furthermore, *Stacy, C. J.,* speaking for the Court in the case of *Bank v. Corl,* 225 N.C. 96, 33 S.E. 2d 613, said: "The intention of the testator is his will. This intention is to be gathered from the general purpose of the will and the significance of the expressions, enlarged or restricted according to their real intent. In interpreting a will, the courts are not confined to the literal meaning of the words. A thing within the intention is regarded within the will though not within the letter. A thing within the letter is not within the will if not also within the intention."

In construing the instrument before us, what do we find to be the intention of the testator with respect to the disposition of his property?

In the first place, it is clear that when the testator wrote Item III of his will, he was under the erroneous impression that he and his wife owned their home place, located at 224 Hermitage Road, Charlotte, North Carolina, as tenants by the entirety. Being under this impression, he stated that the property upon his death, if his wife, Maude Gray Efird, be living, she would automatically own the property. He then proceeded to bequeath to her any automobile or automobiles that he might own at the time of his death and also all of his right, title and interest in and

to all furniture, household effects, and other tangible property contained in their family residence, to be hers absolutely and forever.

In Item IV of his will, the testator provided that after the personalty bequeathed in Item III of his will had been given to his wife, and she had received the real estate that might be owned at the time of his death by them as tenants by the entirety, and after the debts of his estate were paid from the *corpus* of his general estate, but before any death, inheritance, or estate taxes shall be considered or taken into account, his wife, Maude Gray Efird, should have two-sixths or one-third interest in all his estate. Again it is clear that the testator did not intend for the home place to constitute a part of the estate at the time of this division. He was under the impression that when this division would take place, his wife would be the absolute and fee simple owner of the property.

Even so, he did not stop there. He included an additional provision in Item V of his will, directing the payment of death, estate, inheritance and other similar taxes and duties, properly chargeable against his estate, "after all my debts shall have been paid, and after the above properties shall have been given to my wife." In other words, "the above properties," which "properties" necessarily include the home place, must first be set apart and given to his wife, and then out of the remainder of the estate the taxes properly chargeable against the estate were to be paid. He further provided that when such taxes were paid, no part thereof should be charged against any particular beneficiary under his will. Finally, the net remaining assets in the estate were to be divided equally among his four children.

We are not inadvertent to the rule, which the appellants contend is controlling here, to the effect that where "a testator erroneously recites that he has made some disposition of property belonging to him by an instrument other than the will, it is held that such recital is merely an incorrect description of an instrument extrinsic to the will and may not operate as a gift by implication." 57 Am. Jur., Wills, section 1193, page 784. We think this rule would be applicable in the instant case if the plaintiff had to rely exclusively on the provisions of Items III and IV of the will. In these items, the testator does not refer to the real estate held by the entireties as a gift or devise, but merely as passing to his wife, but in Item V of the will he said: "after the above properties shall have been given to my wife," the various taxes, properly chargeable against the estate should be paid, and the remainder of his estate divided among his four children named therein.

A careful consideration of the entire will leads us to the conclusion that in using the language contained in Item V of the will, the testator intended to give whatever interest he might have in the properties re-

ferred to in Items III and IV of his will, to his wife, and that such intention should be made effective.

In the case of *Kerr v. Girdwood,* 138 N.C. 473, 50 S.E. 852, 107 Am. S. R. 551, the testatrix left a will in which she said: "I wish to record the wishes of my darling husband . . . At my death he wished the two laundry properties to be sold, . . . and the proceeds of the sale to be equally divided between his sister (if living) and his brothers, who are living." No other disposition of these properties was made by the testatrix. In construing the above provisions of the will, *Brown, J.,* in speaking for the Court said: "Are these words testamentary in character, or merely a recital of an occurrence which had taken place between her and her husband? After carefully considering the entire will, in the light of the authorities, we have concluded that it was the intention of the testatrix in employing these words that they should have a testamentary effect, and that the language employed by her is of such legal efficacy that the law can give force to it and execute her intention. . . . There is nothing in the entire will inconsistent with the purpose to give the laundry properties in accordance with her husband's wishes. To refuse to give them effect would be at variance with her plain intent. No particular form of expression is necessary to constitute a legal disposition of property. Underhill on Wills, sections 37-43; Schouler, sections 262, 263; *Alston v. Davis,* 118 N.C. 202. Although apt legal words are not used and the language is inartificial, the court will give effect to it where the intent is apparent as that of the testatrix in this will." *In re Edwards' Will,* 172 N.C. 369, 90 S.E. 418; *In re Will of Margaret Deyton,* 177 N.C. 494, 99 S.E. 424; *Burcham v. Burcham,* 219 N.C. 357, 13 S.E. 2d 615.

In *Burcham v. Burcham, supra,* where, in giving effect to a devise by implication, the Court said: "While a devise or bequest by implication should not be presumed except upon cogent reasoning and where necessary to carry out the intent of the testator, the doctrine is well established in the law." The Court quoted with approval the following statement from *Parker v. Tootal,* 11 H. S. Cas. 143, 161: "If a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court may supply the defect by implication, and so mould the language of the testator as to carry into effect, so far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared."

In 57 Am. Jur., Wills, section 1192, page 782, *et seq.,* it is stated: "A bequest or devise may be made by mere implication, unless the implication violates public policy or some established rule of law, but to raise such implication it must be necessary to do so in order to carry out a manifest and plain intent of the testator which would fail unless the

implication is allowed. Gifts by implication are not favored, and cannot rest upon conjecture. Such a gift will not be inferred from mere silence, but must be founded on expressions in the will, and is only admitted as a means of carrying out what the testator appears on the whole to have really meant, but failed somehow to express as distinctly as he should have done. It has been said that the probability of an intention to make the implied gift must be so strong that an intention contrary to that which is imputed to the testator cannot be supposed to have existed in his mind. On the other hand, it is not required that the inference be absolutely irresistible; it is enough if the circumstances, taken together, leave no doubt as to the testatorial intention, and in some cases it is said that the implication may be drawn from slight circumstances appearing from the will." See also 69 C.J., Wills, section 1123, page 69, citing *Kerr v. Girdwood, supra,* and *Ferrand v. Jones,* 37 N.C. 633.

The judgment of the court below is

Affirmed.