MARTHA ANDREWS JOHNSON WING AND JANE VIRGINIA ANDREWS POWER PHILBRICK v. WACHOVIA BANK & TRUST COMPANY, N.A., SUCCESSOR TRUSTEE, AND AUGUSTA ANDREWS YOUNG, JULIA MARKS DOZIER, ALEXANDER A. MARKS, LAURENCE H. MARKS, ALEX B. ANDREWS III, JULIA ANDREWS PARK, MARY S. ANDREWS WORTH, GRAHAM H. ANDREWS, JR., F. M. SIMMONS ANDREWS, AUGUSTA YOUNG MURCHALL, ELEANOR YOUNG BOOKER, SANDRA JOHNSON WALKER, RICHARD T. DOZIER, JR., JANE DOZIER HARRIS, WILLIAM M. MARKS III, RALPH STANLEY MARKS, FRANCES MARKS BRUTON, JULIA MARKS YOUNG, ELIZABETH MARKS GREEN, JANE MARKS CLINE, HAL V. WORTH III, JULIA WORTH RAY, SIMMONS HOLLADAY WORTH, JOHN W. ANDREWS, SARA SIMMONS ANDREWS JOHNSTON AND MARY GRAHAM ANDREWS; ADDITIONAL PARTIES: JESSICA ANNE MURCHALL EDGMON, MELINDA SUSAN MURCHALL, JOHN ALEXANDER MURCHALL, ROBERT ANDREWS BOOKER, PAUL CURTIS BOOKER, PAUL CURTIS BOOKER, MINOR, WILLIAM CONRAD WALKER, JR., JAMES ALEXANDER WALKER, MINOR, TIMOTHY TODD WALKER, MINOR, SHARON VIRGINIA WALKER, MINOR, ANNE GILCHRIST DOZIER, MINOR, PATRICIA JANE DOZIER, MINOR, LAURA CROMWELL DOZIER, MINOR, JULIA

MARKS HARRIS, CHARLES ANDREW HARRIS III, WILLIAM MARK
HARRIS, Minor, WILLIAM M. MARKS IV, Minor, ANN ELVA MARKS,
Minor, RALPH STANLEY MARKS, JR., Minor, RICHARD HUGHES
MARKS, Minor, ALEXANDER ANDREWS GRANT BRUTON, Minor,
EDWARD MacCAULEY BRUTON, Minor, FRANCES BRINKLEY
BRUTON, Minor, HAL VENABLE WORTH IV, Minor, KELLY
ANDREWS WORTH, Minor, FRED C. RAY III, Minor, GRAHAM
ANDREWS RAY, Minor, MABLE Y. ANDREWS, SHERMAN YEAR-
GAN, Trustee, HOWARD E. MANNING, Trustee, WILLIAM HENRY
CLARKSON, JR., OUR LADY OF LOURDES CATHOLIC CHURCH,
JOHN A. McALLISTER, Guardian Ad Litem, S. LEIGH PARK, BRUCE
R. PARK, MABEL Y. ANDREWS, A.B. ANDREWS IV, GEORGE HAMIL-
TON ANDREWS, JAMES ROSE ANDREWS

No. 37

(Filed 2 December 1980)

Trusts §§ 8, 10.2— testamentary trust — silence of will on distribution of corpus —
gift by implication — right to income upon death of beneficiary

Where testator's will provided that a small portion of the income of a
testamentary trust should be paid to testator's brothers and sister for life, another
small portion of the income should be paid to testator's nieces and nephews for
life, 80% of the income should be paid to testator's great nieces and great nephews
alive at his death or born within 21 years after his death, and the 20% of net
income enjoyed for life by testator's brothers, sister, nieces and nephews would
eventually be added to the income received by the great nieces and nephews, the
will provided that the trust would terminate at the death of the last survivor of
testator's brothers, sister, nieces, nephews, great nieces and great nephews alive
at his death, but the will made no provision as to the ultimate distribution of the
trust corpus following termination of the trust, the corpus should not pass by
intestacy but should pass, under the terms of the will, to the ultimate income
beneficiaries, the natural born great nieces and great nephews of testator, since
testator's statement in his will that he gave all of the remainder of his estate to his
brothers as executors and trustees was some evidence of his intent to dispose of
the entire estate and supported the finding of a gift by implication; the duration of
the income interests bequeathed to each of testator's siblings, nieces and nephews
was expressly limited to their lifetimes while the interests granted to the great
nieces and great nephews was not so limited, and in the absence of a disposition of
the principal, a testamentary gift of the income of a trust without limitation as to
its duration amounts to a gift of the principal; testator's termination of the trust
did not indicate an intention to limit the interests of his great nieces and great
nephews, but more strongly supported the conclusion that testator intended only
to ensure the validity of the trust by limiting its duration so as not to violate the
perpetuities rule as recognized in this State at the time of execution of the will;
and testator indicated throughout his will an intent to divide his property on a *per
capita* rather than a *per stirpes* basis, as distribution under the laws of intestacy
would have required. Furthermore, upon the death of a great niece or great
nephew, the income share of such beneficiary should be paid to the beneficiary's

estate until the trust terminates.

Justice BROCK took no part in the consideration or decision of this case.

ON discretionary review of the decision of the Court of Appeals reported in 44 N.C. App. 402, 261 S.E. 2d 279 (1980), reversing judgment of *Braswell, Judge,* entered at the 2 January 1979 Session of Superior Court, WAKE County.[1]

This is an action for declaratory judgment to construe the will of Alexander B. Andrews II. The principal issue presented by this appeal is whether failure to expressly bequeath the corpus of a testamentary trust causes the corpus to pass by intestacy or results in a bequest by implication in favor of the ultimate income beneficiaries. For the reasons set out below, we hold that the corpus of the trust will pass, under the terms of the will, to the ultimate income beneficiaries, the natural born great nieces and great nephews of testator born prior to 21 October 1967.

*Maupin, Taylor & Ellis, P.A., by W. W. Taylor, Jr., and Jane Fox Brown, for defendant-petitioners Augusta Andrews Young, Alexander A. Marks, Laurence H. Marks, Graham H. Andrews, Jr., F. M. Simmons Andrews, William M. Marks III, Ralph Stanley Marks, Frances Marks Bruton, Julia Marks Young, Elizabeth Marks Green, Jane A. Marks (formerly designated as Jane Marks Cline), Hal V. Worth III, Julia A. Worth Ray, Simmons Holladay Worth, John W. Andrews, Sara Simmons Andrews Johnston and Mary Graham Andrews.*

*John A. McAllister, for defendant-petitioners minor and unborn parties as Guardian ad Litem.*

*Vaughan S. Winborne for original plaintiff-appellees.*

---

[1]Petitioners were defendants Augusta Andrews Young, Alexander A. Marks, Laurence H. Marks, Graham H. Andrews, Jr., F. M. Simmons Andrews, William M. Marks III, Ralph Stanley Marks, Frances Marks Bruton, Julia Marks Young, Elizabeth Marks Green, Jane A. Marks (formerly designated as Jane Marks Cline), Hal V. Worth III, Julia A. Worth Ray, Simmons Holladay Worth, John W. Andrews, Sara Simmons Andrews Johnston, Mary Graham Andrews, and the Guardian ad Litem for the minor parties, John A. McAllister. These petitioners are certain of testator's nieces, nephews, great nieces and great nephews who themselves or whose children would receive greater benefit if a gift by implication were found.

*Emanuel and Thompson, by W. Hugh Thompson, for defendant-appellee Alex B. Andrews III.*

*Manning, Fulton & Skinner, by Howard E. Manning, Jr., for defendant-appelles Howard E. Manning, Trustee, and William H. Clarkson, Jr.*

*Smith, Debnam, Hibbert & Pahl, by J. Larkin Pahl, for defendant-appellee James Rose Andrews, minor, as Guardian ad Litem.*

*Hunton & Williams, by Henry S. Manning, Jr., for defendant-appellee Wachovia Bank & Trust Company, N.A., Successor Trustee.*

CARLTON, Justice.

I

Alexander B. Andrews II, a Wake County lawyer, died on 21 October 1946 leaving a will dated 21 November 1945. The will was duly probated and recorded in the office of Clerk of Superior Court of Wake County. He was survived by a sister, two brothers, eleven nieces and nephews, and twelve great nieces and great nephews. One brother and a nephew predeceased testator; both were survived by children.

The will provided for payment of testator's debts and burial expenses and directed the executors to turn over to the University of North Carolina and Church Historical Society the sets of books testator had already committed to each. The will directed that the remainder of the estate be placed in trust for the benefit of his family. Testator's brothers, John and Graham, were designated as trustees. Wachovia Bank & Trust Company, N.A., is the successor trustee. After payment of the expenses of handling the trust, the income was to be divided into *twenty equal shares* and distributed to various members of testator's family. Each of his siblings, one sister and two brothers, was to receive one share of the annual income "for and during [his or her] natural life." One share of the annual income was to be divided equally and paid to testator's eleven nieces and nephews for and during their lifetime. The remaining sixteen shares of the annual income were to be divided equally among testator's great nieces and great nephews alive at his death or born within twenty-one years thereafter. The income interest of this class of beneficiaries was not limited to their lifetime.

Upon the death of testator's sister or brothers, his or her share was to be added to the share of income allotted testator's nieces and nephews. Thus, the ultimate number of shares of income going to the nieces and nephews was four. Upon the death of a niece or nephew, his or her interest in the income ceased, and the portion formerly going to that niece or nephew was to be divided among the surviving members of the class, until the number of survivors reached four. After that time the share of any niece or nephew who died was to be added to the sixteen shares going to the great nieces and great nephews. Under the testator's plan of distribution, his great nieces and great nephews would ultimately receive 100 percent of the trust income.

The duration of the income interest of the great nieces and great nephews was not expressly limited to life as were the income interests of testator's sister, brothers, nieces and nephews. However, a later portion of the will provided that the trust should extend:

> for and during the joint and several lives of any other nieces or nephews or great nieces or great nephews born prior to, and alive at the time of my death, and until the death of the last survivor of my nieces and nephews and the last survivor of my great nieces and nephews [sic] (alive at my death), . . . , and no longer.

Thus, the trust terminates at the death of the last survivor of testator's brothers, sister, nieces, nephews, great nieces and great nephews alive at his death. The paragraph of the will which provides for termination of the trust is silent on the question of entitlement to or distribution of the corpus.

The courts of this state have examined this will on two prior occasions. In *Trust Co. v. Andrews,* 264 N.C. 531, 142 S.E. 2d 182 (1965), this Court construed the portion in the will providing for distribution of income to "those . . . [great nieces and great nephews] hereafter . . . born within twenty-one (21) years after [testator's] death" to limit the class to natural born members and to exclude adopted great nieces and great nephews. Some thirteen years later, the validity of the entire trust was challenged in *Wing v. Trust Co.,* 35 N.C. App. 346, 241 S.E. 2d 397, *cert. denied,* 295 N.C. 95, 244 S.E. 2d 263 (1978), as violating the rule against perpetuities. The Court of Appeals examined the will and held that all interests created under the trust vest within the perpetuities period and, thus, that the trust did not violate the rule. At the time the latter suit was brought, all

necessary parties were joined. The successor trustee, Wachovia Bank & Trust Company, asserted a claim for affirmative declaratory relief in the form of instructions on how to distribute the income after the death of a great niece or great nephew and on how to distribute the corpus at the termination of the trust. A hearing on this claim was delayed pending final determination of the plaintiffs' claim that the trust violated the rule against perpetuities. *The successor trustee's claim for declaratory judgment in the form of instructions is the subject of the present appeal.*

As of 20 October 1978 the corpus of the trust was valued in excess of two million dollars. In 1977 the income distribution to nieces and nephews was $2,174.57 to North Carolina residents and $2,251.72 to nonresidents. Great nieces and great nephews who reside in North Carolina received $4,604.97, while those who are nonresidents received $4,768.73. A great nephew testified that knowing what vested interest he had in the trust corpus would greatly influence his estate planning and his decision on life insurance. A vice-president of the successor trustee testified that the trustee would be forced to seek instructions from the courts on how to distribute the income upon the death of the first great niece or great nephew who received income from the testamentary trust. The members of that class range in age from the mid-twenties to about fifty years of age.

Judge Braswell made findings of fact and concluded as a matter of law that the claim was a proper one for declaratory relief under our Uniform Declaratory Judgment Act, G.S. 1-253 to 267 (1969). He also concluded that the adopted children of testator's nieces and nephews have no interest in either the income or the corpus of the trust and that the seventeen natural great nieces and great nephews alive at testator's death or born within twenty-one years thereafter own the entire equitable interest in the trust subject to the life interests of the nieces and nephews in four of the shares of the trust income. Judge Braswell further concluded that the interest of a great niece or great nephew in the income or corpus does not terminate at his or her death. Accordingly, he ordered that the portion of income which the natural great niece or great nephew, if alive, would have received be paid to the estate, testamentary beneficiaries or intestate heirs of that person until termination of the trust. With respect to the corpus of the trust, Judge Braswell ordered that upon the termination of the trust at the death of the last survivor of testator's nieces, nephews, great nieces and great nephews alive at testator's death, the trust corpus be divided into

seventeen equal shares and distributed equally among the estates, intestate heirs, or testamentary beneficiaries of each deceased great niece or great nephew and those great nieces and great nephews alive at the termination of the trust.

Several of defendants appealed from Judge Braswell's findings, conclusions of law and orders. The Court of Appeals affirmed the conclusion and order concerning the payment of income to the estate of a deceased great niece or great nephew, reasoning that a condition of survivorship will not be inferred, but reversed the trial court's determination that the testator intended that his natural born great nieces and great nephews have the entire interest in the corpus of the trust. Instead, the Court of Appeals held that the testator did not intend to dispose of the trust corpus in the will because of the will's silence on that matter and because testator was a lawyer.

Certain of the appellees in the Court of Appeals petitioned this Court's discretionary review of that portion of the Court of Appeals' decision dealing with the disposition of the trust corpus. We allowed their petition on 3 June 1980. The propriety of this cause for declaratory judgment is not before us.

## II

The trust provision of the will before us lends itself to two possible constructions. The silence of the will on the distribution of the corpus might be construed to mean that testator did not intend to dispose of the corpus by his will; the result of such construction would be to cause the corpus to pass by intestate succession to his heirs at law at the time of testator's death. Alternatively, the will as a whole might be construed to support a gift by implication of the trust corpus in favor of testator's natural born great nieces and great nephews in proportion to their income interests at the time of the termination of the trust. Under this interpretation, the corpus would be divided into seventeen shares and distributed equally among the ultimate income beneficiaries, the natural born great nieces and great nephews, or their respective estates. For the reasons set out below, we hold that testator's intent, gleaned from the four corners of the will, was to leave the corpus of the trust to his natural born great nieces and great nephews and, accordingly, reverse the Court of Appeals.

"The basic rule of construction, and the refrain of every opinion which seeks to comprehend a testamentary plan, is that '[t]he intent

of the testator is the polar star that must guide the courts in the interpretaion of a will.'" *Trust Co. v. Bryant,* 258 N.C. 482, 484, 128 S.E. 2d 758, 760 (1963) (Sharp, J., later C.J.), quoting *Coppedge v. Coppedge,* 234 N.C. 173, 174, 66 S.E. 2d 777, 778 (1951). The intent of the testator must be gathered from the four corners of the will and the circumstances attending its execution. *Wilson v. Church,* 284 N.C. 284, 200 S.E. 2d 769 (1973). In searching a will to determine that intent, courts are guided by the presumption that "one who makes a will is of disposing mind and memory and does not intend to die intestate as to any part of his property," *Ferguson v. Ferguson,* 225 N.C. 375, 377, 35 S.E. 2d 231, 232 (1945); *accord, Jones v. Jones,* 227 N.C. 424, 42 S.E. 2d 620 (1947). Thus, when a will is capable of two interpretations, one resulting in complete testacy and the other in partial testacy, this presumption operates to favor the former over the latter. In re *Will of Wilson,* 260 N.C. 482, 133 S.E. 2d 189 (1963); *Poindexter v. Trust Co.,* 258 N.C. 371, 128 S.E. 2d 867 (1963); *Little v. Trust Co.,* 252 N.C. 229, 113 S.E. 2d 689 (1960); *Finch v. Honeycutt,* 246 N.C. 91, 97 S.E. 2d 478 (1957); *Ferguson v. Ferguson,* 225 N.C. 375, 35 S.E. 2d 231. "Having undertaken to make a will at all, it is not consistent with sound reasoning that the testator would have left his estate dangling." *Coddington v. Stone,* 217 N.C. 714, 720-21, 9 S.E. 2d 420, 424 (1940).

Here, testator's will does not expressly dispose of the corpus of the trust into which he placed the great bulk of his estate. If partial intestacy is to be avoided and the corpus is to pass under the will, then it must be through the vehicle of a bequest or gift clearly implied by the terms of the will.

This State has long recognized and given effect to bequests or gifts by implication. *Finch v. Honeycutt,* 246 N.C. 91, 97 S.E. 2d 478; *Efird v. Efird,* 234 N.C. 607, 68 S.E. 2d 279 (1951); *Burney v. Holloway,* 225 N.C. 633, 36 S.E. 2d 5 (1945); *Burcham v. Burcham,* 219 N.C. 357, 13 S.E. 2d 615 (1941); *Ferrand v. Jones,* 37 N.C. (2 Ired. Eq.) 633 (1843); *see generally* 4 Bowe-Parker: Page on Wills, § 30.18 (4th ed. 1961); 1 Underhill on Wills, §§ 463 to 478 (1900). The doctrine of bequest or gift by implication is simply stated:

> 'If a reading of the whole will produces a conviction that the testator must necessarily have intended an interest to be given which is not bequeathed by express and formal words, the court may supply the defect by implication, and so mould the language of the testator as to carry into

effect, so far as possible, the intention which it is of opinion that he has on the whole will sufficiently declared.'

*Burcham v. Burcham*, 219 N.C. at 359, 13 S.E. 2d at 616 (citations omitted). A gift implied by the terms of the will will be given effect unless the implication violates an established rule of law or offends public policy. *Efird v. Efird*, 234 N.C. 607, 68 S.E. 2d 279; 80 Am. Jur. 2d, Wills, § 1385 (1975).

Despite long-standing acceptance of this doctrine, a gift by implication is not favored in the law and cannot rest upon mere conjecture. *E.g., Burney v. Holloway*, 225 N.C. 633, 36 S.E. 2d 5; 80 Am. Jur. 2d, Wills, § 1385. It will not be inferred execpt upon cogent reasoning. The probability that the testator intended that which is imputed to him "must be so strong that a contrary intention 'cannot reasonably be supposed to exist in testator's mind,' and cannot be indulged merely to avoid intestacy." *Burney v. Holloway*, 225 N.C. at 637, 36 S.E. 2d at 8, quoting 69 C. J., Wills, § 1123 (1934). However, the inference need not be irresistible; it is sufficient if all factors, taken as a whole, leave no doubt as to testator's intent. *Efird v. Efird*, 234 N.C. 607, 68 S.E. 2d 279; 80 Am. Jur. 2d Wills, § 1385.

With these rules in mind, we turn to the will before us. Item 2 of testator's will purports to dispose of the bulk of his estate:

After the payment of my just debts, and the payment of the specific legacies, hereinafter named, *I give, devise, and bequeath the remainder of my estate, of whatsoever kind, character or description, whether real or personal* into the hands of my brothers [as executors and trustees] . . . to have and to hold and to invest and sell and re-invest....

(Emphasis added.) This language indicates that testator intended, by use of the trust, to dispose of his entire estate. When the language following an introductory phrase which purports to dispose of all of testator's property can be interpreted to result in complete disposition or partial intestacy, "the introductory statement, *pointing to a complete disposition*, ought to be considered, and that sense adopted which will result in a disposition of the whole estate." 1 Underhill, *supra*, § 464 (emphasis in original). Thus, the presence of this introductory statement is some evidence of testator's intent to dispose of the entire estate and supports the finding of a gift by implication. *Id.* This factor alone, however, is not determinative.

The duration of the income interests bequeathed to each of testator's siblings, nieces and nephews was *expressly* limited by the provision granting them, to his or her lifetime:

> (b) One share of the net income shall be annually paid to my sister . . . , for and during her natural life.

> (c) One share of the net income shall be annually paid to my brother John . . . , for and during his natural life.

> (d) One share of the net income shall be paid to my brother Graham . . . , for and during his natural life

> (c) [sic] One share of the net income shall be divided in equal parts, or divisions, and paid to my eleven (11) nieces and nephews; . . . for and during their lefetime [sic].

In contrast, the interests granted testator's great nieces and great nephews were not so limited:

> (i) The income from the sixteen shares shall be equally divided among my great nieces and nephews, now twelve (12) in number, and those who hereafter may be born within twenty-one (21) years after my death, they to share equally with the others.

In the absence of a disposition of the principal, a testamentary gift of the income or interest of a fund, such as a trust, without limitation as to its duration amounts to a gift of the principal. *Poindexter v. Trust Co.*, 258 N.C. 371, 128 S.E. 2d 867; *Burcham v. Burcham*, 219 N.C. 357, 13 S.E. 2d 615; 80 Am. Jur. 2d, Wills, § 1389; *Annot.*, 174 A.L.R. 319, 333-36 (1948). The Court of Appeals found this principle inapplicable because Item 6 of the will provides a time for termination of the trust and, thus, for the interests of the great nieces and great nephews thereunder. This provision is not controlling.

Testator, a lawyer, executed the will *sub judice* on 21 November 1945. At that time, this jurisdiction adhered to the minority view that the rule against perpetuitites required that a trust for private purpose terminate within a life or lives in being plus twenty-one years in order to be valid. *E.g., Mercer v. Mercer*, 230 N.C. 101, 52 S.E. 2d 229 (1949); *Trust Co. v. Williamson*, 228 N.C. 458, 46 S.E. 2d 104 (1948); *Springs v. Hopkins*, 171 N.C. 486, 88

S.E. 774 (1916). [2]While testator's termination of the trust might indicate an intention to limit the interests of his great nieces and great nephews, we think it more strongly supports the conclusion that testator intended only to ensure the validity of the trust by limiting its duration so as not to violate the perpetuities rule and thereby intended to protect, rather than limit those interests. In support of the latter construction we note that other provisions of the will indicate the drafter's concern with the rule against perpetuities: the nieces and nephews who were to share in the trust income were specifically named and the class of great nieces and great nephews who were to share in the trust was limited to those alive at testator's death or born within twenty-one years thereafter.

The Court of Appeals considered testator's status as "a man lettered in the law and familiar with the technical sense the law gives to words" to be determinative on the issue of his silence as to the corpus. While the profession and knowledge of the testator may properly be considered in determining intent, it can never be such as to negate the intent clearly expressed in the will. To hold otherwise would be to find a *per se* intent for every mistake or omission in the will of one who holds a law degree. Absent some additional evidence that the testator wrote his or her own will and possessed adequate knowledge to justify imputing to him or her the positive intent to make what appears to be a mistake or omission, the presumption employed by the Court of Appeals cannot stand. We find no such additional evidence in the record before us.

Other factors also support the conclusion that testator intended to dispose of the corpus of his estate and not have it ultimately pass under the laws of intestacy. Testator indicated throughout his will an intent to divide his property on a *per capita* rather than a *per stirpes* basis. A review of the record discloses that the number of nieces, nephews, great nieces and great nephews descending from his sister and brothers was not at all equal. In spite of this difference, the whole thrust of testator's will is to treat each generation equally or on a *per capita* basis. To allow this estate to

---

[2]This line of cases was overruled in *McQueen v. Trust Co.*, 234 N.C. 737, 68 S.E. 2d 831 (1952), and North Carolina thereby adopted the majority rule that the rule against perpetuities "does not relate to and is not concerned with the postponement of the full enjoyment of a vested estate. The time of vesting of title is its sole subject matter.... The question is not the length of the trust but whether title vested within the required time." *Id.* at 741, 743, 68 S.E. 2d at 835, 836 (citations omitted).

ultimately pass under the intestate laws applicable at the time of testator's death would produce a directly contrary result; the estate would pass pursuant to a *per stirpes* scheme. Such a result would violate testator's clearly expressed intent.

This interpretation is otherwise strengthened by a reading of the will. Testator expressly limited his living brothers and sister to a small fractional part of the trust income. He bequeathed to none of them any estate which could pass under their wills or deeds or by descent from them. Moreover, the issue of his deceased brother were pointedly left nothing on a *per stirpes* basis, but only as members of a class. In every instance, testator expressed the intent for his estate to pass on a *per capita*, not *per stirpes*, basis.

The scheme employed by testator in disposing of his large estate unequivocally indicates his intention that the primary benefit of his wealth be ultimately bestowed upon his great nieces and great nephews and that each should share equally. In furtherance of this clear purpose, he allotted only 20 percent of the income from the trust to his sister, brothers, nieces and nephews and provided for a gradual accretion of this amount to the income shares initially allotted his great nieces and great nephews. Testator sought to benefit all members of the class of his great nieces and great nephews insofar as possible without violating the rule against perpetuities and to benefit each equally. Testator clearly intended to favor this class over his siblings, nieces and nephews, those who would take by intestate succession. The intent behind this testamentary plan is clear: by giving to his great nieces and great nephews a major portion of the income of the trust, testator intended that class to be the ultimate beneficiaries of his largesse, the principal as well as the income.

The scheme employed by testator clearly contemplated the great nieces and great nephews as the ultimate beneficiaries of his estate. The implication of testator's intent that the members of that class ultimately receive the corpus of the residuary trust is "so strong that a contrary intention 'cannot reasonably be supposed to exist in testator's mind,'" *Burney v. Holloway*, 225 N.C. at 637, 13 S.E. 2d at 8.

### III

Appellants correctly note in their brief that the issue of continuation of trust income in the event of the death of a great niece or great nephew was not properly before the Court of Appeals since no

error with respect thereto had been assigned to that court. The Court of Appeals proceeded, however, to address the issue. Counsel for substitute trustee requested on oral argument that we not leave this issue in doubt.

The Court of Appeals affirmed the trial court's legal conclusion that the death of a great niece or great nephew does not terminate his or her right to income and that the income should be paid to his or her estate, intestate heirs or testamentary beneficiaries until the termination of the trust. We affirm. The income interests of the ultimate beneficiaries were not limited to their respective lifetimes; their interests were limited solely by the duration of the trust. In contrast, the interests of all the other income beneficiaries were expressly limited to their lifetimes. Testator obviously was aware of and knew how to create life estates. Had he desired to so limit the interests of his great nieces and great nephews, we think he would have done so. We believe his failure to limit these interests to the lifetimes of the respective beneficiaries was intentional.

## IV

In summary, the Court of Appeals erred in reversing the judgment of the trial court and in concluding that the corpus of the trust passed according to the laws of intestate succession in effect at testator's death. The Court of Appeals correctly held that testator intended that income should be paid to the estate of a deceased great niece or great nephew until termination of the trust.

The substitute trustee is directed as follows:

(1) Trust income otherwise payable to a deceased great niece or great nephew shall be paid to his or her estate, intestate heirs, or testamentary beneficiaries until termination of the trust.

(2) Upon termination of the trust, the corpus shall be divided into seventeen equal shares and distributed equally among the natural born great nieces and great nephews, or their respective estates.

The decision of the Court of Appeals is affirmed in part, reversed in part and remanded to that court with instructions to remand to the Superior Court, Wake County, for proceedings consistent with this opinion.

Affirmed in part.

Reversed in part and remanded.

Justice BROCK took no part in the consideration or decision of this case.